**Raymon POLAND, Individually and as Independent Administrator of the Estate of Jessie Poland, Robert Martin, and Frank Martin, Appellants,**

v.

**David OTT, Appellee.**

No. 01–07–00199–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 19, 2008.

Substituted Opinion Dissenting from the Denial of En Banc Consideration Jan. 22, 2009.

Andrew Lee Payne, Sandrice M. McGlown, Payne & Payne & Associates, Houston, for appellants.

Chetna Gosain Koshy, John R. Strawn, Cruse, Scott, Henderson & Allen, L.L.P., Cynthia D. Rendon, Frank A. Doyle, Lauren B. Harris, Melaine Ann Rubinsky, Tamara M. Madden, Johnson, Spalding, Doyle, West 7 Trent, LLP, Dale Burrus Frisby, Leah Ann Greene, Kroger, Myers, Frisby & Hirsch, Houston, for appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

TIM TAFT, Justice.

Appellants, Raymon Poland, individually and as independent administrator of the estate of Jessie Poland, Robert Martin, and Frank Martin ("the Poland parties"), timely moved for rehearing to the panel and for en banc reconsideration to the Court. On March 5, 2008, the Court denied the Poland parties' rehearing motion, but their motion for en banc reconsideration remained pending, thus maintaining our plenary power over the appeal. *See* TEX.R.APP. P. 19.1; *see also City of San Antonio v. Hartman,* 201 S.W.3d 667, 670–71 (Tex.2006) (in holding that motion for en banc reconsideration extends time in which to file petition for review, noting that rule 19.1 treats motions for en banc reconsideration as subset of rehearing mo-

tions for purpose of determining court of appeals' plenary power). During that plenary power, we now *sua sponte* withdraw our opinion and judgment issued January 31, 2008 and issue this opinion and judgment in their stead. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 870 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (citing rule 19.1 as authority for withdrawing opinion and judgment *sua sponte* within Court's plenary power and reissuing new opinion and judgment). Nonetheless, we do not change the disposition of the appeal. The Poland parties' motion for en banc reconsideration is rendered moot by our withdrawing and reissuing our opinion and judgment.[1] *Cf. Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 41 n. 4 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (op. on reh'g) (noting that motion for en banc reconsideration becomes moot when motion for rehearing is granted and new opinion and judgment issue).

The Poland parties appeal from a judgment dismissing their health-care-liability and related claims against appellee, Dr. David Ott. We determine whether the trial court erred in granting Dr. Ott's motion to dismiss the claims against him for the Poland parties' failure timely to serve an expert report on Dr. Ott. We affirm.

## Background

The factual recitations come from the Poland parties' petitions. Appellant Raymon Poland was the husband of Jessie Poland; the remaining appellants were his natural children. In August 2003, Jessie Poland, under the care of Dr. James Willerson (an appellee in a related appeal) and Dr. Ott, was hospitalized at St. Luke's Episcopal Hospital and the Texas Heart Institute (both appellees in another related appeal) for an elective surgical procedure to repair her heart's mitral valve. Dr. Alina Grigore, who was employed by Dr. Arthur S. Keats & Associates (both of whom are appellees in another related appeal), was the anesthesiologist for the surgical procedure. The Poland parties alleged that, at the time of surgery, Jessie Poland's blood contained a level of Coumadin that the health-care providers should have known rendered her blood fully anticoagulated and, thus, rendered surgery dangerous. The surgery was nonetheless performed; Jessie Poland bled internally; and she died several days later of multi-system organ failure.

The Poland parties sued, among other defendants, St. Luke's Episcopal Hospital, the Texas Heart Institute, the University of Texas Health Science Center at Houston, Arthur S. Keats & Associates, and Drs. Ott, Grigore, and Willerson on October 24, 2005 for Jessie Poland's wrongful death, for her pain and suffering and medical costs before her death, and for her burial expenses. By the time of the trial court's complained-of ruling, the Poland parties had amended their petition to allege the following causes of action or theories of recovery against all defendants, including Dr. Ott: (1) negligence, (2) gross negligence, (3) actual and constructive

---

1. After the Poland parties' motion for en banc reconsideration was rendered moot by the withdrawal of our January 31, 2008 opinion and judgment, during the Court's plenary power over this case, and before today's opinion and judgment had issued, en banc consideration of the case was requested from within the Court. *See* Tex.R.App. P. 41.2(c). A majority of the Justices of the Court voted to voted to deny en banc consideration of the case. *See id.* Along with the Court's opinion that issues today, Justice Jennings, joined by Justice Bland, issues an opinion dissenting from the denial of en banc consideration, and Justice Taft issues an opinion concurring in the denial of en banc consideration. Tex.R.App. P. 47.5.

fraud, (4) intentional infliction of emotional distress, (5) assault and battery, (6) intentional and negligent abandonment, (7) breach of fiduciary duties, (8) "negligent breach of fiduciary duties," (9) malpractice, (10) "lack of proper informed consent," (11) "tampering with official medical records," (12) "forgery," (13) violations of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"),[2] and (14) conspiracy among all defendants. This "live" petition also added allegations that the defendants had altered Jessie Poland's medical records and forged Raymon Poland's signature on unspecified hospital documents. They sought actual and exemplary damages.

On June 20, 2006, Dr. Ott moved, under Texas Civil Practice and Remedies Code section 74.351(b), to dismiss the Poland parties' health-care-liability claims against him for failure to serve an expert report upon him or his attorney within 120 days of the filing of those claims.[3] *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b) (Vernon Supp.2008) (providing that trial court must dismiss health-care-liability claim against defendant if claimant fails to serve expert's report and *curriculum vitae* on that defendant within period specified by section 74.351(a)); Act of June 2, 2003, 78th

Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (providing that claimant must serve each defendant against whom health-care-liability claim is asserted with expert's report and *curriculum vitae* not later than 120 days of claim's filing) [hereinafter, "former section 74.351(a)"],[4] *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (Vernon Supp.2008)). The motion alleged that the Poland parties had served the report of their expert, Dr. Dennis Moritz, on Dr. Ott's attorney 123 days after their health-care-liability claims had been filed against him.[5]

The Poland parties did not deny that they had served Dr. Moritz's May 2, 2005 report on Dr. Ott's counsel 123 days after their claims had been filed against Dr. Ott, but in their response, they alleged that they had "served" that same report on Gary McLeod, a representative of Dr. Ott's professional liability carrier (APMC Insurance Services), whom they described in their response as Dr. Ott's "designated representative" for receipt of the report, on July 29, 2005—nearly three months before suit was filed.[6] The Poland parties

---

**2.** *See* Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 2002 & Supp.2008).

**3.** Dr. Ott, like several other defendants, also objected to and moved to strike the Poland parties' live petition to the extent that it attempted to recast health-care-liability claims as other causes of action.

**4.** The current version of section 74.351(a) applies to causes of action that accrued after September 1, 2005, the current act's effective date. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 2–3, 2005 Tex. Gen. Laws 1590, 1590. Because the Poland parties' causes of action accrued before September 1, 2005, the prior statutory version applies.

**5.** This first unsigned report of Dr. Moritz was dated May 2, 2005.

**6.** In May 2006, more than half a year after suit had been filed, the Poland parties served a second unsigned report of Dr. Moritz, dated May 19, 2006, along with a May 2006 report of a nurse, Rachel Cartwright, on at least some of the defendants in their lawsuit. The trial court struck the May 19, 2006 expert report of Dr. Moritz and the May 2006 expert report of Cartwright for their having been untimely served. The Poland parties do not complain on appeal of the striking of Dr. Moritz's or Cartwright's 2006 reports. Because the only report of significance to our discussion is the May 2, 2005 expert report of Dr. Moritz, we refer only to that report in our discussion.

produced evidence that they alleged supported their response's allegation. For example, they attached a letter, dated July 13, 2005, from McLeod to the Poland parties' attorneys, which in pertinent part read:

> Your letter of June 30, 2005 to David Alan Ott, M.D. has been referred to us for response, as we are his professional liability carrier. We will be investigating this case on behalf of Dr. Ott.
>
> . . .
>
> I also request that you provide me with your medical expert's specific criticisms of our member's care so that we might share those concerns with David Alan Ott, M.D.

They also attached their attorney's July 29, 2005 response to McLeod's letter:

> Additionally, you will find enclosed the information that you requested regarding the opinion of our expert witness.
>
> . . .
>
> I will also fax you some additional information shortly.

Attached to the Poland parties' attorney's July 29 letter was the unsigned expert report of Dr. Moritz and his *curriculum vitae* ("CV"). Finally, the Poland parties attached the affidavit of their counsel, who averred in pertinent part as follows:

> *I received notice from APMC Insurance Services on behalf of Dr. Ott. They [sic] requested the "medical expert's specific criticisms of our member's care so that we might share those concerns with David Alan Ott, M.D." . . . . I then replied . . . by sending Mr. Gary McLeod the Expert Report with Resume.* I discussed wanting to look at possible settlement of this claim. . . . Mr. McLeod stated that he would have to send for the medical records from the hospital, to which I returned to him the medical authorization he had previously sent me, *along with a copy of the Expert Report with Resume. . . . The Defendants have had the Expert report with Resume since May 2005.*

(Emphasis added.)

The hearing on Dr. Ott's motion to dismiss and his motion to strike the live petition occurred on July 14, 2006. Other defendants' motions to dismiss, objections to the expert report, and objections to the live petition were heard simultaneously. No additional evidence was presented at the hearing, but the following discussion between the trial court and Dr. Ott's attorney transpired:

> Court: Who got the [expert] report beforehand [before suit's filing]?
>
> . . .
>
> Dr. Ott's attorney: Dr. Ott received it through—he was served with it through his carrier pre suit notification. We, as the attorneys did not—we did not have communications with the plaintiffs before the lawsuit was filed.
>
> . . .
>
> Court: . . . Heart Institute and St. Luke's gets [sic] pre suit report, [Dr.] Grigore gets no report before or after. . . . Willerson, gets—is not a part of this lawsuit. [Dr.] Ott gets report pre suit, directly from his insurance carrier. Attorneys never—
>
> Dr. Ott's attorney: The insurance carrier, yes. The insurance carrier gets them.

On October 30, 2006, the trial court rendered an interlocutory order that, among doing other things, dismissed the claims against Dr. Ott with prejudice:

> On July 14, 2006 . . . CAME TO BE HEARD all parties, by and through counsel, . . . Dr. David Ott's Motion to Dismiss and Dr. David Ott's Motion to Strike & Objections to Plaintiff's [sic]

Third Amended Petition.... The Court, having considered such Motions and Objections, having reviewed the file herein, and heard the argument of counsel, makes the following FINDINGS OF FACTS and ORDERS:

1. Plaintiffs ... filed their Original Petition on October 24, 2005. The 120–day deadline by which Plaintiffs were required to serve their expert reports pursuant to Section 74.351 of the TEX. CIV. PRAC. & REM.CODE was February 21, 2006. The earliest date that Plaintiffs served an expert report to any Defendant, after the filing of their lawsuit, was on February 24, 2006.

. . .

5. With respect to Defendant Dr. David Ott, Plaintiffs mailed Defendant Dr. David Ott's insurance agent with an unsigned expert report from Dennis Moritz, M.D. on July 29, 2005. Plaintiffs provided no evidence that Dr. Ott or his counsel received said unsigned expert report. The suit was filed by Plaintiffs against Dr. Ott on October 24, 2005. The deadline to serve the expert report was February 21, 2006. Plaintiffs served upon Dr. Ott's counsel the unsigned expert report on February 24, 2006, three days after the 120 day deadline, pursuant to Section 74.351 of the TEX. CIV. PRAC. & REM.CODE. It is therefore ORDERED that Defendant Dr. David Ott's Motion to Dismiss and Motion to Strike and Objections to Plaintiff's [sic] Third Amended Petition [be] GRANTED, and all claims against Dr. David Ott [be] DISMISSED with prejudice.

. . .

7. It is further ORDERED that pursuant to Section 74.351 of the TEX. CIV. PRAC. & REM.CODE that ... Dr. David Ott [be] awarded attorney's fees in the amount of $14,893.00. The collection of these attorney's fees is stayed pending outcome of any interlocutory appeal.

This same order also (1) denied St. Luke's Episcopal Hospital and the Texas Heart Institute's joint motion to dismiss under Texas Civil Practice and Remedies Code section 74.351 and (2) granted Dr. Grigore and Arthur S. Keats & Associates' motion to dismiss under section 74.351(b). Finally, the trial court signed a separate interlocutory order that granted Dr. Willerson's motion to dismiss based upon Texas Civil Practice and Remedies Code section 101.106. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 2005).

The Poland parties appealed the adverse rulings dismissing all of their claims against Drs. Ott, Willerson, and Grigore and Arthur S. Keats & Associates, and St. Luke's Episcopal Hospital and the Texas Heart Institute appealed the denial of their motion to dismiss—all under the same appellate cause number. Although the interlocutory order appealed by St. Luke's Episcopal Hospital and the Texas Heart Institute was permitted by statute, this was not true of every appealed order. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a) (Vernon 1997 & Supp.2008). On December 18, 2006, upon the parties' motion, this Court abated the appeal and remanded the cause for the trial court— upon various parties' motions, filed in the trial court after appeal, to sever the interlocutory orders rendered in favor of Dr. Ott, of Dr. Willerson, and of Dr. Grigore and Dr. Arthur S. Keats & Associates—to render final and appealable those interlocutory rulings that had not been appealable on an interlocutory basis. Upon remand, the trial court severed the rulings against the specified defendants from the underlying cause, rendering a final judgment in the newly severed cause numbers involv-

ing Dr. Ott, Dr. Willerson, and Dr. Grigore and Dr. Arthur S. Keats & Associates. On March 15, 2007, this Court reinstated the appeal, assigning different appellate cause numbers to the appeal of what had by then become four separate rulings in four separate trial-court cause numbers. This opinion and judgment concern the Poland parties' appeal of the dismissal order rendered in favor of Dr. Ott.

### The Parties' Arguments

In one issue, the Poland parties argue that the trial court erred in granting Dr. Ott's dismissal motion and dismissing their claims against him with prejudice because they "served" their expert's report and CV on McLeod, Dr. Ott's "designated representative and duly authorized agent" for service of the report, about five months before they filed suit against Dr. Ott, rendering the report timely filed under former section 74.351(a). They argue that service in this fashion was "equivalent to serving" Dr. Ott himself and thus satisfied "the spirit of [former] section 74.351(a)." This argument is grounded in the implicit understanding that former section 74.351(a) can be satisfied by provision of an expert's report to a physician or healthcare provider before a claim has been asserted against that person or entity in a lawsuit (here, presuit, because Dr. Ott was made a defendant by the original petition), so that the same report need not be served again within 120 days of the claim's filing against that defendant. Dr. Ott disputes (1) that McLeod was Dr. Ott's agent for purposes of service of the expert report, as a matter of fact; (2) that former section 74.351(a) allows for service on any person other than the defendant or his attorney, as a matter of law; and (3) that provision of an expert report before a claim is filed in court against the physician or healthcare provider complies with former section 74.351(a).

### The Standard of Review

"We generally review rulings on a motion to dismiss under section 74.351(b) for abuse of discretion." *Gutierrez*, 237 S.W.3d at 871. Some of the issues that we consider in this appeal involve questions of law, to which a *de novo* standard of review generally applies. *Id.* "Nonetheless, a trial court has no discretion in determining what the law is, which law governs, or how to apply the law." *Id.* at 871 n. 1. Accordingly, to the extent that we consider questions of law, the standard of review is the same "regardless of whether it is described as abuse of discretion or *de novo*." *Id.*; *accord Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 795 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

### The Applicable Law

Former section 74.351(a) provides as follows concerning service of the expert report and CV:

§ 74.351. Expert Report

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

*See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847,

875, *amended by* Act of May 18, 2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2008)). The section continues:

> (b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:
>
> > (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and
> >
> > (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

 "Statutes must be construed as written, and legislative intent determined, if possible, from their express terms." *Gutierrez*, 237 S.W.3d at 873. "Chapter 74, in its entirety, rather than provisions in isolation, must be considered, and meaning given to each provision consistent with all others." *Id.* "Courts presume that the entire statute is to be effective and a just and reasonable result is intended." *Id.* "Even if a statute is unambiguous, courts may consider the statute's objective; circumstances of its enactment; its legislative history; ... [and] consequences of a particular construction...." *Id.* "All words used and omitted are presumed used and omitted purposefully." *Id.*

### Provision of the Expert Report Before a Claim's Filing

 We need not determine whether former section 74.351(a) allows designated representatives of a defendant or his attorney to receive service of an expert's report: even if the answer to this question is "yes," we must nonetheless affirm because provision of an expert report before a health-care-liability claim is filed in court against the physician or health-care provider does not meet former section 74.351(a)'s service requirements.

### A. What the Term "Serve" in Former Section 74.351(a) Means

Although former section 74.351(a) does not define the term "serve," this Court has recently held that "the Legislature intended for [health-care-liability] claimants to comply with rule 21a [of the Texas Rules of Civil Procedure] to fulfill the requirements of section 74.351(a)." *Gutierrez*, 237 S.W.3d at 872. In *Gutierrez*, we relied on *Herrera v. Seton Northwest Hospital*[7] for the latter's conclusion that the term "serve" as used in former section 74.351(a) has the same meaning as it does in rule 21a. *See Gutierrez*, 237 S.W.3d at 872. As the *Herrera* court explained:

> The distinction between filing and serving an expert report and *curriculum vitae* is amplified for claims governed by chapter 74 *because [former Texas Revised Civil Statute] article 4590i claimants were merely required to* "furnish" *expert reports, but chapter 74 claimants must* "serve" *them.*
>
> "Serve" *is not defined in section 74.351(a). The code construction act provides guidance, however.* It states that "words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." "Serve" *and* "served" *have distinct and familiar legal meanings under our*

---

7. *See id.*, 212 S.W.3d 452 (Tex.App.-Austin 2006, no pet.).

*rules of civil procedure. See* TEX.R. CIV. P. 21a. The rules of civil procedure govern all actions of a civil nature in Texas courts unless a specific exception applies. We agree with our sister court's conclusion that, *given the applicability of the rules of civil procedure to health care liability claims and the use of "serve" and "served" in the statute, the legislature intended for claimants to comply with Texas Rule of Civil Procedure 21a to fulfill the requirements of section 74.351(a).*

*This construction comports with the legislature's change of the word "furnish" in [former article 4590i,] section 13.01(d) to "serve" in section 74.351(a).* We presume that the legislature enacted the statutory change with knowledge of existing law. *Therefore, we may also presume its awareness of the meaning attached to the word "serve" in rule 21a.*

*Herrera,* 212 S.W.3d 452, 458–59 (Tex. App.-Austin 2006, no pet.) (footnotes and most citations omitted, emphasis added by underlining). Four courts of appeals—including this Court twice since *Gutierrez*—have concluded that the term "serve" in former and current section 74.351(a) refers to rule 21a.[8] Indeed, this is the meaning that the Poland parties argue that we adopt: in citing rule 21a, they argue, "This court should conclude that the legislature intended the term 'serve' [in former section 74.351(a)] to have the same meaning that it carries in the rules of civil procedure."

### B. Why Presuit Provision of an Expert Report Does Not Satisfy the Requirement in Former Section 74.351(a) to "Serve" the Report

 The plain language of former section 74.351(a) and rule 21a, which it implicitly incorporates by use of the term "serve," simply does not contemplate "ser-

**8.** *See Eikenhorst v. Wellbrock,* No. 01–07–00459–CV, 2008 WL 2339735, at *6–7 (Tex. App.-Houston [1st Dist.] June 5, 2008, no pet.) (memo.op.) (citing *Herrera* and *Gutierrez* for proposition that "[r]ule 21a applies to the statutory requirements contained in the Texas Civil Practice and Remedies Code for medical malpractice cases" and holding, based thereon, that defendants were entitled to rule 21a's 3–day "mailbox" rule, rendering timely their objections to expert report); *Acosta v. Chheda,* No. 01–07–00398–CV, 2007 WL 3227650, at *2 n. 6 (Tex.App.-Houston [1st Dist.] Nov. 1, 2007, pet. denied) (memo.op.) (citing *Gutierrez* ); *Jain v. Stafford,* No. 02–06–00450–CV, 2007 WL 1502084, at *3–4 (Tex.App.-Fort Worth May 24, 2007, no pet.) (memo.op.) (in case in which issue was whether defendant had timely complied with section 74.351(a)'s requirement that objection to expert report be "filed and served" within 21 days after he was served with report, relying on *Herrera* and reasoning, "[Plaintiff-appellee] takes the position that rule 21a ..., regarding the three-day grace period, is inapplicable because the rule applies only to deadlines covered by the rules of civil procedure and not to the Texas Civil Practice and Remedies Code.

We disagree and agree with our sister courts that have held that rule 21a also applies to the statutory requirements contained in the Texas Civil Practice and Remedies Code for medical malpractice cases."); *Herrera,* 212 S.W.3d at 458–59; *Kendrick v. Garcia,* 171 S.W.3d 698, 703–04 (Tex.App.-Eastland 2005, pet. denied); *Quint v. Alexander,* No. 03–04–00819–CV, 2005 WL 2805576, at *2–3 (Tex.App.-Austin, Oct. 28, 2005, pet.denied) (memo.op.); *see also Prestwood v. Settle,* No. 03–07–00111–CV, 2008 WL 537159, at *4, 5 (Tex.App.-Austin Feb. 28, 2008, pet. denied) (memo.op.) (in dictum, following *Herrera* for this proposition). *But see Spiegel v. Strother,* 262 S.W.3d 481, 483–84, 486 (Tex.App.-Beaumont 2008, no pet.) (indicating that "Rules 21, 21a, and 21b do not reference service of a report required by statute" but that "these rules provide an approach" that court "may" follow when "resolving disputes over actual and timely receipt" of expert report; also noting that "[s]ome courts have applied Rule 21a to the statutory service requirement for expert reports," while at same time noting, based on dictionary definition, that "serve" refers generally to delivery of document in manner that provides reasonable, sufficient notice).

vice" of the expert's report and CV on a physician or health-care provider until after a claim has been filed in court against that person or entity. We reach this conclusion despite the fact that, as the Poland parties note, the section requires service *"not later than"* 120 days after a claim is filed, rather than requiring service within 120 days *after* the claim is filed. (Emphasis added.) Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590.

### 1. First Reason: The Language of Chapter 74

First, former section 74.351(a) speaks in terms of service on a *party* or the *party's* attorney, and it uses the term "defendant" for the physicians and health-care providers whom the expert report implicates. *See id.* One is not a "party" or a "defendant" until a claim is asserted against one in a suit. That the Legislature knew what it was saying when it employed the terms "party" and "defendant" in former section 74.351(a) can be seen from other provisions of chapter 74. For example, section 74.051, concerning notice of a health-care-liability claims, provides:

> § 74.051. Notice
>
> (a) Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, *to each physician or health care provider* against whom such claim *is being made* at least 60 days *before the filing of a suit in any court of this state based upon a health care liability claim.* ...
>
> (b) In such pleadings as are *subsequently filed in any court,* each *party* shall state that it has fully complied with the provisions of this section ... and shall provide such evidence thereof as the judge of the court may require to determine if the provisions of this chapter have been met.
>
> (c) Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all *parties* and *potential parties.*

Tex. Civ. Prac. & Rem.Code Ann. § 74.051(a)-(c) (Vernon 2005) (emphasis added). Section 74.051(a)'s notice requirements necessarily apply before a health-care-liability claim is asserted in a suit ("Any person ... asserting a ... claim ... shall give written notice ... at least 60 days *before the filing of a suit in any court....* "). Thus, when the Legislature drafted section 74.051(a), it (1) used neither "party" nor "defendant," but instead spoke only of persons, claimants, physicians, and health-care providers; (2) spoke of claims that "are being *made,*" rather than of claims that are *"filed";* and (3) provided that written notice be "give[n]," rather than that it be "served." *See id.* (emphasis added). In contrast, section 74.051(b), which necessarily establishes requirements applying only after court claims have been filed ("In such pleadings as are *subsequently filed in any court,* each party shall ...."), the Legislature employed the term "party." *See id.* § 74.051(b). And throughout chapter 74, the Legislature employs the terms "party," "plaintiff," and "defendant" only in those sections that clearly concern actions, events, or requirements that necessarily follow the filing of a health-care-liability claim in court.[9]

---

9. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.053 (Vernon 2003) (employing terms "defendant" and "plaintiff" in context of damages alleged in pleadings); *id.* § 74.154(b)(3) (Vernon 2005) (employing term "defendant" in context of jury instructions); *id.* § 74.301(a) (Ver-

In sum, when the Legislature intended that chapter 74's requirements would or could occur before the filing of a claim in court, it did not employ terms like "party" or "defendant"; in contrast, only those sections of chapter 74 that necessarily concern actions, events, or requirements occurring after the filing of a court claim employ these terms. Therefore, the use of the terms "party" and "defendant" in former section 74.351(a) indicates that the Legislature intended for this section's service requirements to apply only after the assertion of a claim in court. *See Gutierrez*, 237 S.W.3d at 873 ("Chapter 74, in its entirety, rather than provisions in isolation, must be considered, and meaning given to each provision consistent with all others.").

**2. Second Reason: the Procedure for the Defendant's Objection**

Second, by its plain language, former section 74.351(a) ties the deadline for the physician or health-care provider's filing and serving an objection to the expert report to the date of service of the report. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (emphasis added), *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a)). "Each defendant physician or health care provider whose conduct is implicated in a report must *file* and *serve* any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* (emphasis added). There is no proceeding in which to "file" the objection until a claim is asserted in court and the physician or health-care provider has become an actual defendant (which also explains why the section uses the term "defendant" to describe the physician or health-care provider). A good illustration is a case like this one, in which the health-care-liability claimants purport to have provided the physician with the expert report more than 21 days before the filing of a court claim against him. The result of the Poland parties' interpretation in this case is that Dr. Ott could never have timely filed an objection to the expert report with the court because the 21–day deadline to do so would have expired before a proceeding existed in which that objection could have been filed. In sum, the 21–day deadline for a defendant's objections makes no sense unless a court claim has already been filed against the defendant. We cannot presume that the Legislature intended the nonsensical result that could occur under the Poland parties' interpretation. *See Gutierrez*, 237 S.W.3d at 873 ("Courts presume that the entire

non 2005) (employing term "defendant" in context of limitation on noneconomic damages rendered upon final judgment); *id.* § 74.302(a)(1) (Vernon 2005) (same); *id.* § 74.303(a) (Vernon 2005) (same); *id.* § 74.352 (Vernon 2005) (employing terms "plaintiff," "defendant," and "party" in context of postsuit discovery procedures); *id.* § 74.401(e) (Vernon 2005) (employing term "party" in context of pretrial objections to expert-witness qualifications and court consideration of same); *id.* § 74.402 (Vernon 2005) (employing terms "defendant" and "party" in context of qualification of and objections to expert witnesses "in a suit involv-

ing a health care liability claim"); *id.* § 74.403 (Vernon 2005) (employing term "defendant" in context of pretrial objections to expert-witness qualifications and court consideration of same); *id.* § 74.503 (Vernon 2005) (employing term "defendant" in context of periodic payments upon award to claimant); *Id.* § 74.505 (Vernon 2005) (employing term "defendant" in context of showing of financial responsibility associated with periodic payments for award of future damages); *id.* § 74.506 (Vernon 2005) (employing term "defendant" in context of effect of death of recipient on certain damages awards).

statute is to be effective and a . . . reasonable result is intended.").

### 3. Third Reason: the Language of Rule 21a and Related Rule 21

Third, the plain language of rule 21a, which former section 74.351(a) implicitly incorporates through the use of the term "serve," generally concerns postsuit notice. Rule 21a provides (1) that "[e]very notice required by these rules, and every pleading, plea, motion, or other form or request to be served under Rule 21, other than the citation . . . may be served" in one of four ways upon "the party" or "the party's duly authorized agent or attorney of record"; (2) that one of those four methods is any manner "as the court . . . may direct"; (3) that "[n]otice may be served by a party to the suit" or "an attorney of record," among others; and (4) that "[t]he party or attorney of record shall certify to the court compliance with this rule in writing over signature and on the filed instrument." Tex.R. Civ. P. 21a. Texas Rule of Civil Procedure 21, to which rule 21a's service provisions refer, is entitled "Filing and Serving Pleadings and Motions" and concerns "[e]very pleading, plea, motion or application to the court"; the rule also employs language clearly indicating its application to pending suits. Tex.R. Civ. P. 21. The fact that former section 74.351(a) implicitly incorporates by reference rule 21a—which concerns service of pleadings, pleas, motions, and requests in the context of lawsuits—further indicates the Legislature's intent that former section 74.351(a)'s service requirements apply after the filing of a health-care-liability claim in court.

### 4. Fourth Reason: the Possibility that a Potential Party May Not Become an Actual Party

Fourth, a physician or health-care provider may not know the details of the allegations against him—or even be assured that he or it will be sued—until the filing of a petition asserting a health-care-liability claim. Chapter 74 requires that the claimant give presuit notice of his health-care-liability claim before the filing of a court claim, but the purpose of the notice provision is simply "to encourage pre-suit negotiations so as to avoid excessive cost of litigation." *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex.1983); *accord Phillips v. Sharpstown Gen. Hosp.*, 664 S.W.2d 162, 168 (Tex.App.-Houston [1st Dist.] 1983, no writ) (indicating that purpose of predecessor to section 74.051(a) is "to facilitate discussion of the merits of a potential health care claim and thereby initiate amicable settlement negotiations"). If a court claim is later filed, the petition's allegations could, theoretically, differ somewhat from whatever the presuit notice stated. Furthermore, chapter 74 does not require that every person or entity who is given presuit notice actually be sued. *See Thompson v. Community Health Inv. Corp.*, 923 S.W.2d 569, 572 (Tex.1996) (providing that predecessor to section 74.051(a) does not require "that all those receiving presuit notice be joined in any subsequent suit"). If, as the Poland parties contend, former section 74.351(a)'s service requirement can be fulfilled by providing the expert report to a physician or health-care provider before a health-care-liability claim is filed against him or it in court, then the physician or health-care provider will be put in the position of having to object to the report—and likely of having to hire counsel to do so—before having a petition's allegations against which to compare the expert's report or even knowing if they will be sued at all. The Legislature surely did not intend this result.

### 5. Fifth Reason: Former Section 74.351(a)'s Purposes

Fifth and finally, "the purposes behind former section 74.351(a)'s adoption were,

among other things, to remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and *to give hard-and-fast deadlines for the serving of expert reports.*" *Intracare Hosp. N.*, 222 S.W.3d at 797 (emphasis added). Section 74.351(a)'s expert-report deadline is hard-and-fast only if it is triggered by the filing of a health-care-liability claim against the particular physician or health-care provider in court. Allowing the provision of an expert report that occurs before a court claim is filed to suffice for section 74.351(a) service potentially allows for ambiguity and confusion, rather than promoting certainty.

For example, there is no guarantee that whatever report may be provided during presuit negotiations will be the report on which the claimant relies to satisfy section 74.351(a). If the Poland parties' interpretation of former section 74.351(a) were correct, then a physician or health-care provider who receives an expert report from the claimant before a claim is filed against him or it will have to guess whether the document is intended to satisfy chapter 74 or instead intended simply to be a negotiation tool.[10] And this raises a related question (although not in this case): what if a document from a medical expert that is provided during the presuit negotiation period is patently insufficient, not containing all of the basic criteria that would make it a valid section 74.351(a) report? If the Poland parties' interpretation is correct, then must a physician or health-care provider assume that the document is an attempted (albeit deficient) section 74.351(a)

report and object to its deficiencies, for fear of waiving any objections, or should the potential defendant instead assume that the document is not intended to be a report, with a true report to follow if that potential defendant is eventually sued?

The potential ambiguity that could arise from these predicaments is obvious and does not comport with the purposes of former section 74.351(a). Because the Poland parties' interpretation would contravene the Legislature's intent in adopting former section 74.351(a), we do not deem the Legislature to have intended it. *See Gutierrez*, 237 S.W.3d at 873 ("Even if a statute is unambiguous, courts may consider the statute's objective; circumstances of its enactment; its legislative history; ... [and] consequences of a particular construction....").

**C. How the Poland Parties Respond**

The Poland parties nonetheless contend that (1) McLeod was Dr. Ott's "designated representative and duly authorized agent" to receive the report; (2) McLeod "requested that the report be served upon the insurance carrier"[11]; (3) thus, "the serving of the report on [McLeod] is equivalent to serving the report upon Dr. Ott or his counsel"; and (4) they therefore "served Dr. Ott [with the report] *in the manner that he requested.*" (Emphasis added.)

To the extent that the Poland parties mean that Dr. Ott (through his alleged agent) agreed that presuit provision of the expert report would substitute for section 74.351(a) service (or like estoppel argu-

---

10. Here, for example, the Poland parties argued at one point below that Dr. Ott had waived any objection to Dr. Moritz's expert report for not having objected to it within 21 days of its having been sent to McLeod, even though Dr. Ott had not yet been sued.

11. The Poland parties contend that Dr. Ott's counsel acknowledged this fact below by advising the trial court that "Dr. Ott received it [the expert report] through—he was served with it through his carrier presuit notification." We note, however, that counsel later clarified this statement: "The insurance carrier gets [the expert report and CV]."

ment), we first note that the statement by Dr. Ott's counsel upon which the Poland parties rely does not say what Dr. Ott or McLeod agreed or did not agree to. Additionally, McLeod's July 13 letter to the Poland parties' counsel requested only that the Poland parties' counsel *"provide [him]* with [the] medical expert's specific criticisms of our member's care," without indicating how or when those criticisms should be sent—or even that those criticisms be sent in the form of a section 74.351(a) report and CV. (Emphasis added.) McLeod's July 13 letter is thus no evidence that McLeod (even if he could act as Dr. Ott's representative for service of an expert report) agreed that presuit provision of the expert report would substitute for post-suit service of it—assuming without deciding that a potential party can validly agree to this.

## Conclusion

We hold that the trial court did not err in granting Dr. Ott's motion to dismiss under section 74.351(b) and in dismissing with prejudice all claims against him.[12]

We affirm the judgment of the trial court.[13]

Appellants moved for rehearing to the panel and for en banc reconsideration to the Court. *See* TEX.R.APP. P. 49.1, 49.7.

The panel denied the motion for rehearing addressed to it, leaving pending the motion for en banc reconsideration, which maintained the Court's plenary power over the case. *See* TEX.R.APP. P. 19.1, 49.3.

During the pendency of the motion for en banc reconsideration, the Court *sua sponte* withdrew its opinion and judgment issued January 31, 2008, thus rendering moot the motion for en banc reconsideration. *Cf. Brookshire Bros., Inc. v. Smith,* 176 S.W.3d 30, 41 n. 4 (Tex.App.-Houston [1 Dist.] 2004, pet. denied) (op. on reh'g).

After the Court's withdrawal of its January 31, 2008 opinion and judgment, during the pendency of the Court's plenary power over the case, and before another opinion and judgment had issued in the case, en banc consideration was requested from within the Court. *See* TEX.R.APP. P. 41.2(c).

Chief Justice RADACK and Justices TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, and BLAND, participated in the vote to determine en banc consideration.

A majority of the Justices of the Court voted to deny en banc consideration. *See id.*

Justice TAFT, concurring in the denial of en banc consideration. *See* TEX.R.APP. P. 47.5.

12. The trial court dismissed or struck all of the Poland parties' claims against Dr. Ott, even those couched as something other than health-care-liability claims. However, the Poland parties do not complain on appeal of the dismissal of these additional claims. Additionally, the Poland parties do not challenge on appeal the award of attorney's fees to Dr. Ott. Even were we to construe the Poland parties' brief to complain that no attorney's fees should have been awarded because the motion to dismiss should have been denied, we would overrule that challenge for the same reasons discussed in our opinion.

13. On July 17, 2008, the Court issued its opinion and judgment in *Yilmaz v. McGregor,* 265 S.W.3d 631 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). In *Yilmaz,* we relied on the original opinion in *Poland v. Ott,* which is withdrawn by today's opinion. *See Yilmaz,* 265 S.W.3d at 637. We note, however, that the holding and reasoning of the first *Poland* opinion on which we relied in *Yilmaz* has been retained in today's *Poland* opinion. Accordingly, our holding and reasoning in *Yilmaz* is not affected by the withdrawal of our prior opinion and judgment, and the issuance of today's opinion and judgment, in this case.

Justice JENNINGS, joined by Justice BLAND, dissenting from the denial of en banc consideration. *See id.*

## OPINION CONCURRING IN THE DENIAL OF EN BANC CONSIDERATION

Most of the arguments raised in the opinion dissenting from the denial of en banc consideration have already been addressed in the Court's opinion of December 19, 2008, and I refer the reader to the Court's discussion of those issues in that opinion. *See Poland v. Ott,* 278 S.W.3d 39 (Tex.App.-Houston [1st Dist.] 2008, no pet. h.). I write briefly to address two specific arguments raised in the dissenting opinion.

First, the dissenting opinion opines that the term "serve" in former section 74.351(a) [1] means only "to 'make legal delivery of (a notice or process)' and to 'present (a person) with a notice or process as required by law.'" *Poland,* 278 S.W.3d at 59 (Jennings, J., dissenting) (quoting BLACK'S LAW DICTIONARY 1372 (7th ed.1999)). However, as explained in the Court's opinion, that definition would in effect take us back to the language of

---

1. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 [hereinafter "former TEX. CIV. PRAC. & REM.CODE ANN. § 74.351"], *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2008)).

2. I do not construe our holding in this case to preclude the service of an expert report on the same day that the petition asserting the claim against that defendant is filed in court. The point of the relevant holding is simply that a claimant cannot serve an expert report on a defendant before a case against that defendant exists. A plaintiff will sometimes serve certain documents (*e.g.,* requests for disclosure or other discovery requests) on a defendant, along with a copy of the petition, on the same day that the plaintiff instigates the

former section 74.351(a)'s predecessor, which does not apply to this case. Former section 74.351(a)'s predecessor required only that the claimant "furnish" the expert report. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986, *repealed and recodified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875. Of course, as the *Herrera* and *Gutierrez* courts concluded, we should presume that in changing the requirement from "furnish" to "serve," the Legislature intended to require something more than simply the provision of the expert report by any means whatsoever. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez,* 237 S.W.3d 869, 872 (Tex.App.-Houston [1st Dist.] 2007, pet. denied); *Herrera v. Seton Northwest Hosp.,* 212 S.W.3d 452, 458–59 (Tex.App.-Austin 2006, no pet.).

Second, the dissenting opinion reasons:

Nothing in former section 74.351(a) precludes a claimant from serving an implicated physician or health care provider with her expert report and curriculum vitae along with an original petition[ [2]] or prior to the actual filing of such a

---

suit against that defendant, and the served document will still be considered part of the proceedings if the document references the lawsuit. *See In re Arden,* No. 08–03–00269–CV, 2004 WL 576064, at *3 (Tex.App.-El Paso Mar.24, 2004, orig. proceeding) (memo.op.) (noting that plaintiff had served discovery requests on defendant along with service of original petition); *see also* TEX.R. CIV. P. 21 (requiring that pleadings, pleas, motions, and applications filed in court be served on all other parties "at the same time"). I see no reason why this same construct would not apply to the service of an expert report under former section 74.351(a) when that service occurs on the same day as the filing of a pleading alleging a claim against the same defendant; however, the facts of this case did not present this issue for the Court to determine.

claim in court in an effort to reach a settlement. *When a claimant does serve her expert report on an implicated physician or health care provider along with the filing of her health care liability claims prior to filing those claims in court, then a defendant certainly can object to the report not later than 21 days after being served with the petition.*

*Poland,* 278 S.W.3d at 60 (Jennings, J., dissenting) (emphasis added). The problem with this reasoning is that the plain language of former section 74.351(a) does not allow it. Former section 74.351(a) provides:

**§ 74.351. Expert Report**

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day *after the date it was served,* failing which all objections are waived.

*See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (emphasis added), *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a)). By its plain language, former section 74.351(a) thus ties the deadline for the defendant's filing and serving its objection to the expert report *to the date of service of the report on the defendant,*

not to the date that the defendant is served with the petition that alleges a claim against him. *See id.* Accordingly, even if former section 74.351(a) allowed the provision of an expert report to a defendant before the filing of a claim against him to suffice as "service" (which it does not), the defendant would have to "file and serve" his objections to that report not later than 21 days after that report was "served" on him presuit. The potential ambiguity arising from this predicament, as well as the fact that no cause exists presuit in which to file anything, are two of the reasons that the Court has held in this case that section 74.351(a) does not contemplate presuit provision of an expert report to suffice as "serv[ice]" of the report.

With these comments, I concur in the decision of the Court to deny en banc consideration in this case.

TERRY JENNINGS, Justice, dissenting from the denial of en banc consideration.

I withdraw my dissent that issued on December 19, 2008 and substitute the following opinion in its stead.

In its opinion, the panel erroneously concludes that appellants, Raymon Poland, Individually and as Independent Administrator of the Estate of Jessie Poland, Robert Martin, and Frank Martin ("the Polands"), untimely served their medical liability expert report on appellee, Dr. David Ott, MD. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 [hereinafter "former section 74.351(a)"] (amended 2005) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008)).

In fact, the Polands, on July 29, 2005, had, upon request, mailed their expert's report to Gary McLeod of APMC Insur-

ance Services ("APMC"), Dr. Ott's insurance carrier. It is undisputed that the Polands' attorneys served the expert report on APMC, and Dr. Ott in no way denies the fact that McLeod actually received the report.

Regardless, the panel reasons that because the Polands did not, after filing their health care liability claims in court, serve yet another copy of the expert report directly on Dr. Ott or his attorneys, the Polands' claims for the wrongful death of Mrs. Poland must be dismissed with prejudice and the Polands must pay the attorneys' fees of Dr. Ott. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). In doing so, the panel misinterprets the plain language of former section 74.351(a), disregards the legislative purposes of the statute, disregards the fundamental purpose of rule 21a, and misapplies the rule, resulting in a serious error, requiring en banc consideration of the case. *See* TEX.R.APP. P. 41.2(c).

### Factual and Procedural Background

The pertinent facts of the case are straightforward and undisputed. St. Luke's Episcopal Hospital ("St.Luke's"), on August 11, 2003, admitted Mrs. Poland for elective mitral valve [1] replacement surgery. Although Mrs. Poland had been taking Coumadin for mitral valve regurgitation, she stopped taking Coumadin on August 9, 2003 in preparation for the surgery. Dr. Ott, the attending cardiac surgeon, performed the surgery on August 12, 2003. Due to bleeding complications that occurred during the surgery, Mrs. Poland

was twice taken back into surgery, and she died as a result of the complications on August 20, 2003.

Thereafter, the Polands' attorneys complied with the notice provision of chapter 74 of the Texas Civil Practice and Remedies Code.[2] Having received the Polands' notice (presumably from Dr. Ott), McLeod, on July 13, 2005, wrote a letter to the Polands' attorney informing them that their notice had been referred to APMC "for response, as we are [Dr. Ott's] professional liability carrier. We will be investigating this case on behalf of Dr. Ott." McLeod also requested the Polands' "medical expert's specific criticisms of our member's care so that we might share those concerns with David Alan Ott, M.D." Fulfilling McLeod's request, the Polands' attorneys, on July 29, 2005, mailed him "the information you requested regarding the opinion of our *expert witness*," enclosing their expert report, written by Dr. Dennis Moritz, M.D., a Board Certified Cardiac Surgeon. (Emphasis Added). Attached to Dr. Moritz's report was his lengthy curriculum vitae.

In sum, Dr. Moritz, in his expert report, stated that the pertinent standard of care in regard to surgery on a patient on Coumadin "is to stop the Coumadin and allow the coagulation profile to return to normal." He also stated, "Performing any elective surgery on a fully anticoagulated patient is a breach of the standard of care. This is particularly true for operations such as heart surgery in which bleeding is always a potential hazard." Dr. Moritz

---

1. The mitral valve is "[a] valve of the heart, composed of two triangular flaps, that is located between the left atrium and left ventricle and regulates blood flow between these chambers." THE AMERICAN HERITAGE MEDICAL DICTIONARY 523 (2d ed.2002).

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.051(a) (Vernon 2005) ("Any person or

his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. . . . ").

noted that it "is essential to check the [Prothrombin Time ("PT") and International Normalized Ratio ("INR")] before surgery and defer surgery until it returns to near normal," and that Mrs. Poland's PT/INR "was not only elevated, but was well above the therapeutic range at the time of admission." He emphasized that "[t]he dangerous [PT/INR] level was confirmed ..., but the operation proceeded nonetheless. The attending surgeon, Dr. Ott, as well as the Anesthesiologists involved should have seen these levels on INR and immediately cancelled the case." Dr. Moritz concluded,

It is my opinion based on a reasonable degree of medical probability that proceeding with this operation in a patient who was fully anticoagulated with Coumadin led to bleeding, multiple transfusions of blood products, multiple organ failure, and finally death.

The principle of not doing elective surgery on a fully anticoagulated patient is so basic to surgical principles, that I feel this breach of the standard of care must also reflect a serious system failure at this hospital. Many people had knowledge, or should have had knowledge of Mrs. Poland's PT/INR. Any of these could have and should have initiated action to cancel the case. This failure resulted in Mrs. Poland's death.

On October 24, 2005, the Polands filed their original petition, alleging, as noted by the panel,

that, at the time of surgery, [Mrs.] Poland's blood contained a level of Coumadin that the health-care providers should have known rendered her blood fully anti-coagulated and, thus, rendered surgery dangerous. The surgery was nonetheless performed; Mrs. Poland bled internally; and she died several days later of multi-system organ failure.

*Poland v. Ott,* 278 S.W.3d 39, 41 (Tex. App.-Houston [1st Dist.] 2008, no pet. h.).

Subsequently, Dr. Ott moved to dismiss the Polands' health care liability claims on the ground that the Polands had failed to timely serve him or his attorneys with Dr. Moritz's expert report. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005); TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). Concluding that the Polands had untimely served Dr. Ott with Dr. Moritz's expert report, the trial court entered its October 30, 2006 interlocutory order granting Dr. Ott's motion to dismiss the Polands' health care liability claims against him.

## Section 74.351(a)

In their sole issue concerning Dr. Ott, the Polands argue that the trial court erred in dismissing their health care liability claims against Dr. Ott on the ground that they did not comply with former section 74.351(a) because they, in fact, timely "served [their expert's] report on Dr. Ott's designated representative and duly authorized agent, his insurance carrier, who initiated contact with [the Polands'] counsel and requested the report be sent to him so that he could share those concerns with Dr. David Ott." The Polands assert that they "satisfied the spirit of [former] section 74.351(a) by serving the report on Dr. Ott's designated representative instead of serving it upon Dr. Ott's attorneys because Dr. Ott's designated representative and duly authorized agent requested that the report be served upon the insurance carrier."

In fact, the trial court, during the hearing on Dr. Ott's motion to dismiss, asked all of the defendants present, "[W]ho got the report beforehand?" Counsel for Dr. Ott answered:

Dr. Ott received it through—*he was served with it* through his carrier, presuit notification.

(Emphasis added.)

Dr. Ott argues that the trial court did not err in dismissing the Polands' health care liability claims because the Polands "did not satisfy the requirements of [section] 74.351 by mailing Dr. Ott's insurance carrier an unsigned expert report prior to filing their health care liability claim." Dr. Ott does not claim that he and his attorneys did not actually receive the report. Rather, he emphasizes that section 74.351 "provides that the expert report must be served upon the party or the party's attorney. It does not indicate that the report may be mailed to the party's insurance carrier or any agent of the party." Thus, Dr. Ott asserts that neither "service" on his "insurance adjuster" nor "pre-suit service" can "satisfy" the requirements of section 74.351.

The panel, without determining whether the Polands' service of their expert report on McLeod at APMC was effective, holds:

[P]rovision of an expert report before a health-care-liability claim is filed in court against the physician or health-

care provider does not meet former section 74.351(a)'s service requirements.

*Poland,* 278 S.W.3d at 47–48. The panel reasons:

The plain language of former section 74.351(a) and [Texas Rule of Civil Procedure] 21a, which it implicitly incorporates by use of the term "serve," simply does not contemplate "service" of the expert's report and [curriculum vitae] on a physician or health-care provider until after a claim has been filed in court against that person or entity.

*See id.* The panel's erroneous holding and reasoning is based on another panel's holding in *University of Texas Health Science Center at Houston v. Gutierrez,* 237 S.W.3d 869, 873 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). In *Gutierrez,* this Court held that:

Given the express legislative intent of Chapter 74 and the intentional legislative act of replacing the word "furnish" with "serve" in section 74.351(a), we determine that *proper service under rule 21a must occur* to effectuate the intent of Chapter 74 as a whole, and section 74.351(a) specifically.[3]

---

**3.** In reaching this holding, the panel in *University of Texas Health Science Center at Houston v. Gutierrez* relied in large part on *Herrera v. Seton Northwest Hospital,* 212 S.W.3d 452, 459 (Tex.App.-Austin 2006, no pet.). *University of Texas Health Science Center at Houston v. Gutierrez,* 237 S.W.3d 869, 872–73 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). Unfortunately, the reliance upon *Herrera,* which is substantively distinguishable, by both the panel in *Gutierrez* and the panel here is misplaced.

In *Herrera,* Herrera's attorneys claimed that they had timely sent, by regular mail, a copy of Herrera's medical liability expert report to the defendant doctor and hospital. *Herrera,* 212 S.W.3d at 456. Significantly, both the doctor and the hospital alleged that they did not receive the report until Herrera's attorneys subsequently sent them, outside of section 74.351(a)'s deadline, the

report by facsimile transmission. *Id.* Herrera argued that under the "mailbox rule" in Texas Rule of Civil Procedure 5, he "constructively delivered" the report to the defendants when he placed it into the control of the United States Postal Service. *Id.* The Austin Court of Appeals concluded that Herrera's reliance upon rule 5 was misplaced because it concerns the filing of documents with a court clerk, not service on a party. *Id.* at 458 (citing Tex.R. Civ. P. 5). The court also concluded that the Legislature intended for health care liability claimants to comply with rule 21a "to fulfill the requirements of section 74.351(a)." *Id.* at 459. However, in doing so, the court noted that a "party who accomplishes service under rule 21a is entitled to a presumption of delivery":

A certificate by a party or an attorney of record, or the return of the officer, or the

*Id.* (emphasis added). The panel concedes:

> We reach this conclusion despite the fact that, as the [Polands] note, the section requires service *"not later than"* 120 days after a claim is filed, *rather than requiring service within 120 days after the claim is filed.*

*Poland,* 278 S.W.3d at 48 (emphasis added).

Although Dr. Ott and the panel state that the "plain language" of former section 74.351(a) actually requires that a medical liability expert report be served only after the filing of a lawsuit asserting a health care liability claim, nothing in the plain language of the statute so states. Former section 74.351(a) provides:

> In a health care liability claim, a claimant shall, *not later than* the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties.

*See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005) (emphasis added). Thus, as conceded by the panel, former section 74.351(a) actually requires service *"'not later than'* 120 days after a claim is filed," not *"within 120 days* after the claim is filed." (Emphasis added.)

The Texas Supreme Court has explained,

> When interpreting statutes, we try to give effect to legislative intent. "Legislative intent remains the polestar of statutory construction." However, it is a cardinal law in Texas that a court construes a statute, "first by looking to the plain and common meaning of the statute's words." If the *meaning of the* statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. Further, if a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create an ambiguity.

*Fitzgerald v. Advanced Spine Fixation, Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex. 1999) (citations omitted).

Here, the panel turns to Texas Rule of Civil Procedure 21a and creates such an ambiguity. *See* Tex.R. Civ. P. 21a. Rather than focus on the plain and common meaning of the word "serve," the panel reasons that former section 74.351(a) "implicitly incorporates" rule 21a, which does not, in the words of the panel, "contemplate 'service'" of any pleading, plea, mo-

---

affidavit of any other person showing service of a notice *shall be prima facie evidence of the fact of service.*

*Id.* (quoting Tex.R. Civ. P. 21a) (emphasis added).

The Austin Court of Appeals did not hold, as did this Court in *Gutierrez,* that proper service under rule 21a *"must occur* to effectuate the intent of Chapter 74 as a whole, and section 74.351 specifically," even if the defendant health care provider has admitted to actually having received an expert report. *See Gutierrez,* 237 S.W.3d at 873 (emphasis added). Rather, the Austin Court of Appeals merely held that Herrera

"was not entitled to any presumption of delivery." 212 S.W.3d at 460. It noted that section 74.351(a) "contemplates service to parties consistent with the rules of civil procedure" and that Herrera did not "use any method of service authorized by rule 21a to deliver copies of his expert report and curriculum vitae." *Id.* Thus, the Austin Court of Appeals concluded that "Herrera [had] failed to prove compliance with the statutory deadline." *Id.* Given that the defendant doctor and hospital actually denied receiving the report mailed by Herrera's attorneys, the court's conclusion makes sense.

tion, or other form of request required to be served under rule 21 until after a claim has been filed in a court. The panel also notes that each defendant whose conduct is implicated in an expert's report "must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005). Thus, the panel concludes that delivery of an expert report to a defendant physician or health care provider "before a health-care-liability claim is filed in court against the physician or health-care provider does not meet former section 74.351(a)'s service requirements." *Poland,* 278 S.W.3d at 46.

The word "serve," as a verb, is defined simply as to "make legal delivery of (a notice or process)" and to "present (a person) with a notice or process as required by law." BLACK'S LAW DICTIONARY 1372 (7th ed.1999). Thus, all that former section 74.351(a) requires is that a health care liability claimant "deliver" or "present" each party or their attorney with an expert report and curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted by the hard-and-fast deadline. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005). Only if a defendant physician or health care provider "has not been served" with an expert report by the deadline, "shall" a trial court then order the claim dismissed with prejudice and award attorney's fees and costs to the pertinent defendants. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

Rule 21a does not define the word "serve," which, as noted above, simply means to "deliver"; rather, it provides:

Every notice required by these rules, and every pleading, plea, motion or other form of request required to be served under Rule 21, other than the citation to be served by the filing of a cause of action and except as otherwise expressly provided in these rules, *may be served by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record,* as the case may be, either [1] in person or by agent or by courier receipted delivery or [2] by certified or registered mail, to the party's last known address, or [3] by telephonic document transfer to the recipient's current telecopier number, or [4] by such other manner as the court in its discretion may direct.

TEX.R. CIV. P. 21a (emphasis added). The plain purpose of rule 21a is to ensure that parties receive, by delivery, "notice" and "every pleading, plea, motion or other form of request required to be served under Rule 21." *Id.* It clearly gives trial courts discretion to direct other methods of delivery. *Id.* More importantly, as explained by the Fort Worth Court of Appeals:

The purpose of the rules relating to service and notice is to make reasonably certain that all parties to a suit are notified as to the date and time the court has set their matter down for hearing and determination. This is in order that the parties, individually or by counsel may appear, and present their side of the case and to take such action as is deemed appropriate to protect their interest. Thus, *service and notice in a technical sense is incidental where the main purpose of obtaining the appearance of all parties and their participation is accomplished.*

*Hill v. W.E. Brittain, Inc.,* 405 S.W.2d 803, 807 (Tex.App.-Fort Worth 1966, no writ) (emphasis added).

In *Hill,* although the Hills did not deny that they were actually "served with" a copy of a motion for judgment not withstanding the verdict and notice of a hearing on the motion, they complained because it was not sent to them "by registered mail as provided by Rule 21a." *Id.* The court concluded that "prima facie evidence of service" and the appearance and participation of the Hills at the hearing demonstrated that the Brittain's notice by mail was adequate. *Id.* The court explained that the Hills "were in no way prejudiced." *Id.* Moreover, the Hills made "no showing that they were denied any rights or privileges or that had service been proper, assuming it was not, that a different result would have obtained." *Id.* In sum, nothing suggested that the Hills "could or would have made a better showing or presented a stronger case had they received notice by registered or certified mail rather than by regular mail." *Id.*

Here, likewise, although Dr. Ott complains that neither he nor his attorneys received the Polands' expert report directly from the Polands after they had filed their lawsuit, the Polands' service of the expert report upon Dr. Ott's insurance carrier prior to the filing of their lawsuit, as requested by McLeod, was adequate. Dr. Ott makes no showing of any prejudice. In fact, APMC is presumably fulfilling its duty to defend him.

Relying on rule 21a to fault the Polands for not serving yet another copy of their expert report on Dr. Ott after filing suit not only results in a miscarriage of justice, but actually goes against the very purpose of our rules of civil procedure upon which the panel relies to reach its holding. We are to "liberally" construe the rules because "[t]he proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established rules of substantive law." TEX.R. CIV. P. 1. The general commentary to rule 1 expressly warns:

> Any procedural device or rule therefore, which impedes the investigation or the evaluation of the facts or the awarding of the just consequences thereon, is incompatible with an ideal procedure. No mere rule of procedural form or courtesy should be allowed to delay or control the disposition of the litigation upon its merits.

> No judgment should ever be rendered in the trial court which is based upon mere procedural technicalities.... There is no vested right in rules of procedure; much less is there any vested right in procedural errors.

TEX.R. CIV. P. 1–General Commentary–1966 (Vernon 2003). This is especially true when a litigant like Dr. Ott has not shown any prejudice due to receiving the expert report pre-suit.

Nothing in former section 74.351(a) precludes a claimant from serving an implicated physician or health care provider with her expert report and curriculum vitae along with an original petition or prior to the actual filing of such a claim in court in an effort to reach a settlement. When a claimant serves her expert report on an implicated physician or health care provider along with the filing of her health care liability claims or prior to the filing of those claims in court, then the defendant can object to the report suit is filed. Here, regardless, the plain language of former section 74.351(a) simply does not render untimely the Polands' delivery of their expert's report on APMC upon its request. It certainly does not evidence a legislative intent that a claimant's failure to serve yet another copy of the same expert report after the filing of a claim

requires that the trial court dismiss the claim.

The purpose behind the Legislature's requirement of "early expert reports" is not to create a "gotcha"; it is to "stem frivolous suits against health care providers." *Lewis v. Funderburk,* 253 S.W.3d 204, 205 (Tex.2008). As recently noted by our sister court, in enacting Chapter 74, the Legislature sought to " '(1) reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in Texas insurance, tort, and medical practice systems;' and '(2) decrease the cost of those claims and ensure that awards are rationally related to actual damages.' " *Mokkala v. Mead,* 178 S.W.3d 66, 74 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (quoting Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 10.11(b), 2003 Tex. Gen. Laws 847, 884). In presenting House Bill 4, which included the pertinent language in section 74.351, Representative Joe Nixon, Chair of the House Committee on Civil Practices, explained,

> House Bill 4 ... is designed to *promote fairness and efficiency* in civil lawsuits, *protect Texas citizens and Texas courts from abusive litigation tactics,* remove incentives in the system that are causing unwarranted delay and expense. House Bill 4—its purpose is to restore the needed balance in our court system so that it can operate more efficiently and more fairly and less costly.

*Id.* (citing *Hearings on Tex. H.B. 4 Before the House Comm. on Civil Practices,* 78th Leg., R.S. 1 (Feb. 26, 2003)) (statement of Rep. Nixon) (transcript available from Capitol Research Services, Austin, Texas) (emphasis added). Representative Nixon emphasized that "the hard reality is we just need to make a *hard and fast deadline, like we do on statue [sic] of limitations*—as we do on other requirements."

*Id.* (citing Debate on Tex. H.B. 4 on the Floor of the House, 78th Leg., R.S. 317 (March 19, 2003) (statement of Rep. Nixon) (transcript available from Capitol Research Services, Austin, Texas) (emphasis added)).

Here, not only did the Polands meet former section 74.351(a)'s deadline, they, by providing, upon the direct request of McLeod, APMC with the expert report of Dr. Moritz prior to filing their health care liability claims, essentially placed all of their cards on the table to effectuate an early settlement of the case. As noted by the trial court when addressing the Polands' attorneys at the hearing on the motion to dismiss:

> What I will do is I will issue an order one way or the other.... Because this issue needs to be decided. Because lawyers usually don't do what you have done. And *I feel like plaintiffs were attempting to do what the statute attempts to require of them.* And usually the case is plaintiffs are trying to do the least, and defendants file a motion to dismiss in that situation.

(Emphasis added.)

Dismissing the Polands' claims with prejudice and making them pay the attorney's fees of Dr. Ott under these circumstances constitutes a misapplication of former section 74.351(a). In doing so, the panel misinterprets the plain language of the statute and goes against its purpose to stem frivolous lawsuits against health care providers while promoting fairness and efficiency in such lawsuits.

Certainly, a health care liability claimant's certification of compliance with rule 21a in delivering an expert report to a defendant doctor or health care provider would entitle the claimant to "a presumption of delivery" of the report. However, the bottom line is that the claimant need not rely on such "a presumption of deliv-

ery" after the defendant's attorney acknowledges that the defendant "was served with it."[4] Accordingly, this panel's statement in the instant case that former section 74.351(a) implicitly incorporates the requirements of rule 21a and the panel's statement in *Gutierrez* that "proper service under rule 21a must occur to effectuate the intent of Chapter 74 as a whole, and section 74.351 specifically" are in serious error. *See Poland,* 278 S.W.3d at 58; *Gutierrez,* 237 S.W.3d at 873.

### Conclusion

In sum, the En Banc Court should hold that the Polands timely served Dr. Ott with the health care liability expert report of Dr. Moritz, sustain their sole issue, and remand the case to the trial court for further proceedings. Moreover, the En Banc Court should overrule this Court's holding in *Gutierrez* that "proper service under rule 21a must occur to effectuate the intent of Chapter 74 as a whole, and section 74.351 specifically." *Gutierrez,* 237 S.W.3d at 873. Accordingly, I respectfully dissent from the denial of en banc consideration of the case.

---

4. As noted above, when the trial court, during the hearing on Dr. Ott's motion to dismiss, asked all of the defendants present, "[W]ho got the report beforehand?" Counsel for Dr. Ott answered:

Dr. Ott received it through—*he was served with it* through his carrier, presuit notification.

(Emphasis added.) Again, this fulfilled the direct request of Dr. Ott's insurance carrier, which, presumably, had a duty to defend him.