Opinion issued February 6, 2009



 








In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-06-01038-CV
____________

ST. LUKE’S EPISCOPAL HOSPITAL and THE TEXAS HEART
INSTITUTE, Appellants

V.

RAYMON POLAND, INDIVIDUALLY AND AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF JESSIE POLAND, ROBERT
MARTIN, and FRANK MARTIN, Appellees




On Appeal from 152nd District Court
Harris County, Texas
Trial Court Cause No. 2006-38894



 
OPINION DISSENTING FROM THE DENIAL OF
EN BANC RECONSIDERATION

          In its opinion, the panel erroneously concludes that appellees, Raymon Poland,
individually and as independent administrator of the estate of Jessie Poland, Robert
Martin, and Frank Martin (“the Polands”), untimely served their medical liability
expert report on the attorneys of appellants, St. Luke’s Episcopal Hospital (“St.
Luke’s”) and The Texas Heart Institute (“THI”). See Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 [hereinafter “former section
74.351(a)”] (amended 2005) (current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a) (Vernon Supp. 2008)). 
          In fact, as expressly found by the trial court, the Polands had already served
their expert’s report on the attorneys for St. Luke’s and THI prior to the Polands’
filing of their health care liability lawsuit. 
          Regardless, the panel reasons that because the Polands did not, after filing their
health care liability claims in court, serve yet another copy of the report to the
attorneys, who already had the report in their possession, the Polands’ claims for the
wrongful death of Mrs. Poland must be dismissed with prejudice, and the Polands
must pay the attorneys’ fees of St. Luke’s and THI. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(b) (Vernon Supp. 2008). In doing so, the panel misinterprets
the plain language of former section 74.351(a), disregards the legislative purposes of
the statute, disregards the fundamental purpose of rule 21a, and misapplies the rule,
resulting in a serious error, requiring en banc reconsideration of the case. See Tex.
R. App. P. 41.2(c).
Factual and Procedural Background 
          The pertinent facts of the case are straight forward and undisputed. St. Luke’s, 
on August 11, 2003, admitted Mrs. Poland for elective mitral valve


 replacement
surgery. Although Mrs. Poland had been taking Coumadin for mitral valve
regurgitation, she stopped taking Coumadin on August 9, 2003 in preparation for the
surgery. Due to bleeding complications that occurred during the surgery, Mrs. Poland
was twice taken back into surgery, and she died on August 20, 2003 as a result of the
complications. 
          Thereafter, the Polands’ attorneys complied with the notice provision of
chapter 74 of the Texas Civil Practice and Remedies Code.


 Having been in contact
with the attorneys for St. Luke’s and THI, the Polands’ attorneys, by a letter faxed on
May 6, 2005, informed the St. Luke’s and THI attorneys that they had “several issues
that we wish to address with you and risk management prior to filing suit.” They
attached to their letter the May 2, 2005 “medical evaluation of our expert witness, Dr.
Dennis Moritz, MD,” a Board Certified Cardiac Surgeon. (Emphasis added.) 
Attached to Dr. Moritz’s report was his lengthy curriculum vitae. 
          In sum, Dr. Moritz, in his expert report, stated that the pertinent standard of
care in regard to surgery on a patient on Coumadin “is to stop the Coumadin and
allow the coagulation profile to return to normal.” He also stated, “Performing any
elective surgery on a fully anticoagulated patient is a breach of the standard of care. 
This is particularly true for operations such as heart surgery in which bleeding is
always a potential hazard.” Dr. Moritz noted that it “is essential to check the
[Prothrombin Time (“PT”) and International Normalized Ratio (“INR”)] before
surgery and defer surgery until it returns to near normal,” and that Mrs. Poland’s
PT/INR “was not only elevated, but was well above the therapeutic range at the time
of admission.” He emphasized that “[t]he dangerous [PT/INR] level was confirmed
. . . , but the operation proceeded nonetheless.” He concluded,
It is my opinion based on a reasonable degree of medical probability that
proceeding with this operation in a patient who was fully anticoagulated
with Coumadin led to bleeding, multiple transfusions of blood products,
multiple organ failure, and finally death.
 
The principle of not doing elective surgery on a fully anticoagulated
patient is so basic to surgical principles, that I feel this breach of the
standard of care must also reflect a serious system failure at this
hospital. Many people had knowledge, or should have had knowledge
of Mrs. Poland’s PT/INR. Any of these could have and should have
initiated action to cancel the case. This failure resulted in Mrs. Poland’s
death. 
          After receiving Dr. Moritz’s expert report, the attorneys for St. Luke’s and THI,
by letter dated May 19, 2005, responded that they would agree to “a pre-suit
settlement conference . . . contingent on the participation of the other healthcare
providers implicated in Dr. Dennis Moritz’s report.”


 
          On October 24, 2005, the Polands filed their original petition, alleging, as
noted by the panel, 
that, at the time of surgery, [Mrs.] Poland’s blood contained a level of
Coumadin that the health-care providers should have known rendered
her blood fully anti-coagulated and, thus, rendered surgery dangerous. 
The surgery was nonetheless performed; Jessie Poland bled internally;
and she died several days later of multi-system organ failure. 

St. Luke’s Episcopal Hosp. v. Poland, No. 01-06-01038-CV, 2009 WL _______, at
*__ (Tex. App.—Houston [1st Dist.] Feb. 6, 2009, no pet. h.).
          Subsequently, St. Luke’s and THI moved to dismiss the Polands’ health care
liability claims on the grounds that the Polands had failed to timely serve them with
Dr. Moritz’s expert report and that Dr. Moritz’s expert report is “legally insufficient.” 
See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847,
875 (amended 2005); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). Concluding
that the Polands had in fact timely served St. Luke’s and THI with Dr. Moritz’s expert
report and that the report is sufficient, the trial court entered its October 30, 2006
interlocutory order denying St. Luke’s and THI’s motion to dismiss the Polands’
health care liability claims.
 Section 74.351(a)
          In their first issue, St. Luke’s and THI argue that the trial court erred in denying
their motion to dismiss the Polands’ health care liability claims because, under former
section 74.351(a), “an expert report must be served within 120-days after filing a
lawsuit asserting a health care liability claim.” (Emphasis added.) St. Luke’s and
THI do not claim that their attorneys did not actually receive the report. Rather, they
assert,
What is in dispute is when the Polands could first “serve” their report
within the meaning of section 74.351(a). Under section 74.351(a), there
should be no doubt the Polands had to serve their expert report between
the time they filed their lawsuit on October 24, 2005 and the deadline
of February 21, 2006. . . . Despite the statute’s plain language, the
Polands contend their letter from Dr. Moritz satisfied their statutory
burden even though it was sent long before suit was filed and was in
relation to a possible pre-suit settlement conference. 

(Emphasis added.) The panel agrees, holding,
 
[T]he plain language of former section 74.351(a) and [Texas Rule of
Civil Procedure] 21a, which it implicitly incorporates by use of the term
‘serve’ simply does not contemplate ‘service’ of the expert’s report and
[curriculum vitae] on a physician or health-care provider until after a
claim has been filed in court against that person or entity . . . . 
Accordingly, the provision of an expert report to a physician or health-care provider before a claim is filed against that individual or entity in
court does not comply with former section 74.351(a)’s service
requirement; instead, the 120-day period in which an expert report must
be served is triggered under former section 74.351(a) by the filing of a
health-care-liability claim against that person or entity. 

St. Luke’s Episcopal Hosp., 2009 WL _______, at *__ (emphasis added) (citations
omitted). 
          The panel’s erroneous holding and reasoning is based on its recent holding in
Poland v. Ott, No. 01-07-00199-CV, 2008 WL5392015 (Tex. App.—Houston [1st
Dist.] Dec. 19, 2008, no pet. h.), which was based on another panel’s holding in
University of Texas Health Science Center at Houston v. Gutierrez, 237 S.W.3d 869,
873 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In Gutierrez, this Court held
that:
Given the express legislative intent of Chapter 74 and the intentional
legislative act of replacing the word “furnish” with “serve” in section
74.351(a), we determine that proper service under rule 21a must occur
to effectuate the intent of Chapter 74 as a whole, and section 74.351(a)
specifically.[


] 
 
Id. (emphasis added). In Ott, the panel conceded:
We reach this conclusion despite the fact that, as the [Polands] note, the
section requires service “not later than” 120 days after a claim is filed,
rather than requiring service within 120 days after the claim is filed.

Ott, 2008 WL 5392015, at *7 (emphasis added). 
          Although St. Luke’s and THI and the panel state that the “plain language” of
former section 74.351(a) actually requires that a medical liability expert report be
served only after the filing of a lawsuit asserting a health care liability claim, nothing
in the plain language of the statute so states. Former section 74.351(a) provides, 
In a health care liability claim, a claimant shall, not later than the 120th
day after the date the claim was filed, serve on each party or the party’s
attorney one or more expert reports, with a curriculum vitae of each
expert listed in the report for each physician or health care provider
against whom a liability claim is asserted. The date for serving the
report may be extended by written agreement of the affected parties. 
See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847,
875 (amended 2005). Thus, as conceded by the panel in Ott, former section 74.351(a)
actually requires service “‘not later than’ 120 days after a claim is filed,” not “within
120 days after the claim is filed.” Ott, 2008 WL 5392015, at *7 (emphasis added). 
          The Texas Supreme Court has explained, 
When interpreting statutes, we try to give effect to legislative intent. 
“Legislative intent remains the polestar of statutory construction.”
However, it is cardinal law in Texas that a court construes a statute,
“first by looking to the plain and common meaning of the statute’s
words.” If the meaning of the statutory language is unambiguous, we
adopt, with few exceptions, the interpretation supported by the plain
meaning of the provision’s words and terms. Further, if a statute is
unambiguous, rules of construction or other extrinsic aids cannot be
used to create an ambiguity. 

Fitzgerald v. Advanced Spine Fixation, Sys., Inc., 996 S.W.2d 864, 865–66 (Tex.
1999) (footnotes omitted).  
          Here and in Ott, the panel has turned to Texas Rule of Civil Procedure 21a and
created such an ambiguity. See Tex. R. Civ. P. 21a. Rather than focus on the plain
and common meaning of the word “serve,” the panel reasons that former section
74.351(a) “implicitly incorporates” rule 21a, which does not, in the words of the
panel, “contemplate ‘service’” of any pleading, plea, motion, or other form of request
required to be served under rule 21 until after a claim has been filed in a court. St.
Luke’s Episcopal Hosp., 2009 WL _______, at *__. Thus, the panel, in Ott, 
concluded that delivery of an expert report to a defendant physician or health care
provider “before a health-care liability claim is filed in court against the physician or
health care provider does not meet former section 74.351(a)’s service requirements.” 
 Ott, 2008 WL5392015, at *6.
          The word “serve,” as a verb, is simply defined as to “make legal delivery of (a
notice or process)” and to “present (a person) with a notice or process as required by
law.” Black’s Law Dictionary 1372 (7th ed. 1999). Thus, all that former section
74.351(a) requires is that a health care liability claimant “deliver” or “present” each
party or the party’s attorney with an expert report and curriculum vitae of each expert
listed in the report for each physician or health care provider against whom a liability
claim is asserted by the hard-and-fast deadline. See Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005). Only if a
defendant physician or health care provider “has not been served” with an expert
report by the deadline, “shall” a trial court then order the claim dismissed with
prejudice and award attorney’s fees and costs to the pertinent defendants. See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(b). 
          Rule 21a does not define the word “serve,” which, as noted above, simply
means to “deliver”; rather, it provides:
Every notice required by these rules, and every pleading, plea, motion
or other form of request required to be served under Rule 21, other than
the citation to be served by the filing of a cause of action and except as
otherwise expressly provided in these rules, may be served by delivering
a copy to the party to be served, or the party’s duly authorized agent or
attorney of record, as the case may be, either [1] in person or by agent
or by courier receipted delivery or [2] by certified or registered mail, to
the party’s last known address, or [3] by telephonic document transfer
to the recipient’s current telecopier number, or [4] by such other manner
as the court in its discretion may direct.

Tex. R. Civ. P. 21a (emphasis added). The plain purpose of rule 21a is to ensure that 
parties receive, by delivery, “notice” and “every pleading, plea, motion or other form
of request required to be served under Rule 21.” See Tex. R. Civ. P. 21a. It clearly
gives trial courts discretion to direct other methods of delivery. Tex. R. Civ. P. 21a. 
More importantly, as explained by the Fort Worth Court of Appeals:
The purpose of the rules relating to service and notice is to make
reasonably certain that all parties to a suit are notified as to the date and
time the court has set their matter down for hearing and determination. 
This is in order that the parties, individually or by counsel may appear,
and present their side of the case and to take such action as is deemed
appropriate to protect their interest. Thus, service and notice in a
technical sense is incidental where the main purpose of obtaining the
appearance of all parties and their participation is accomplished. 

Hill v. W. E. Brittain, Inc., 405 S.W.2d 803, 807 (Tex. App.—Fort Worth 1966, no
writ) (emphasis added). 
          In Hill, although the Hills did not deny that they were actually “served with”
a copy of a motion for judgment notwithstanding the verdict and notice of a hearing
on the motion, they complained because it was not sent to them “by registered mail
as provided by Rule 21a.” Id. The court concluded that “prima facie evidence of
service” and the appearance and participation of the Hills at the hearing demonstrated
that the Brittain’s notice by mail was adequate. Id. The court explained that the Hills
“were in no way prejudiced.” Id. Moreover, the Hills made “no showing that they
were denied any rights or privileges or that had service been proper, assuming it was
not, that a different result would have obtained.” Id. In sum, nothing suggested that
the Hills “could or would have made a better showing or presented a stronger case
had they received notice by registered or certified mail rather than by regular mail.” 
Id.
          Likewise, in Ott, although Dr. Ott complained that neither he nor his attorneys
received the Polands’ expert report directly from the Polands after they had filed their
lawsuit, Dr. Ott made no showing of any prejudice. The Polands’ service of the
expert report upon Dr. Ott’s insurance carrier prior to the filing of their lawsuit, as
requested by the insurance carrier, was adequate. Ott, 2008 WL 5392015, at *18 
(Jennings, J. dissenting).
          Here, unlike in Ott, the Polands’ attorneys, having been in contact with the
attorneys for St. Luke’s and THI, by a letter faxed on May 6, 2005, informed the St.
Luke’s and THI attorneys that they had “several issues that we wish to address with
you and risk management prior to filing suit” and attached to their letter the May 2,
2005 “medical evaluation of our expert witness, Dr. Dennis Moritz, MD,” a Board
Certified Cardiac Surgeon. After actually receiving Dr. Moritz’s expert report, the
attorneys for St. Luke’s and THI, by letter dated May 19, 2005, responded that they
would agree to “a pre-suit settlement conference . . . contingent on the participation
of the other healthcare providers implicated in Dr. Dennis Moritz’s report.” Thus,
there is no doubt at all that the attorney’s for St. Luke’s and THI had in fact received
Dr. Moritz’s report. St. Luke’s and THI simply cannot claim any prejudice under
these circumstances, and the Polands’ service of the expert report directly upon
counsel for St. Luke’s and THI was more than adequate.
          Relying on rule 21a to fault the Polands for not serving yet another copy of
their expert report on the St. Luke’s and THI attorneys after filing suit not only results
in a miscarriage of justice, but actually goes against the very purpose of our rules of
civil procedure upon which the panel relies to reach its holding. We are to “liberally”
construe the rules because “[t]he proper objective of rules of civil procedure is to
obtain a just, fair, equitable and impartial adjudication of the rights of litigants under
established rules of substantive law.” Tex. R. Civ. P. 1. The general commentary to
rule 1 expressly warns:
Any procedural device or rule therefore, which impedes the
investigation or the evaluation of the facts or the awarding of the just
consequences thereon, is incompatible with an ideal procedure. No
mere rule of procedural form or courtesy should be allowed to delay or
control the disposition of the litigation upon its merits.
 
No judgment should ever be rendered in the trial court which is based
upon mere procedural technicalities . . . . There is no vested right in
rules of procedure; much less is there any vested right in procedural
errors.

Tex. R. Civ. P. 1–General Commentary–1966 (Vernon 2003). This is especially true
when litigants like St. Luke’s and THI have not been prejudiced by their attorneys’
receipt of the expert report pre-suit.     
          Nothing in former section 74.351(a) precludes a claimant from serving an
implicated physician or health care provider with her expert report and curriculum
vitae along with an original petition or prior to the actual filing of such a claim in
court in an effort to reach a settlement. When a claimant serves her expert report on
an implicated physician or health care provider along with the filing of her health care
liability claims or prior to the filing of those claims in court, then a defendant can, as
did St. Luke’s and THI here, object to the report after suit is filed. Here, regardless,
the plain language of former section 74.351(a) simply does not render untimely the
Polands’ delivery of their expert’s report on the attorneys of St. Luke’s and THI. It
certainly does not evidence a legislative intent that a claimant’s failure to serve yet
another copy of the same expert report on the same opposing counsel after the filing
of a lawsuit requires that the trial court dismiss the lawsuit. 
          The purpose behind the Legislature’s requirement of “early expert reports” is
not to create a “gotcha”; it is to “stem frivolous suits against health care providers.” 
Lewis v. Funderburk, 253 S.W.3d 204, 205 (Tex. 2008). As recently noted by our
sister court, in enacting Chapter 74, the Legislature sought to “‘(1) reduce excessive
frequency and severity of health care liability claims through reasonable
improvements and modifications in Texas insurance, tort, and medical practice
systems;’ and ‘(2) decrease the cost of those claims and ensure that awards are
rationally related to actual damages.’” Mokkala v. Mead, 178 S.W.3d 66, 74 (Tex.
App.—Houston [14th Dist.] 2005, pet. denied) (quoting Act of June 2, 2003, 78th
Leg., R.S. ch. 204, § 10.11(b), 2003 Tex. Gen. Laws 847, 884). In presenting House
Bill 4, which included the pertinent language in section 74.351, Representative Joe
Nixon, Chair of the House Committee on Civil Practices, explained, 
House Bill 4 . . . is designed to promote fairness and efficiency in civil
lawsuits, protect Texas citizens and Texas courts from abusive litigation
tactics, remove incentives in the system that are causing unwarranted
delay and expense. House Bill 4—its purpose is to restore the needed
balance in our court system so that it can operate more efficiently and
more fairly and less costly. 

Id. (citing Hearings on Tex. H.B. 4 Before the House Comm. on Civil Practices, 78th
Leg., R.S. 1 (Feb. 26, 2003) (statement of Rep. Nixon) (transcript available from
Capitol Research Services, Austin, Texas)) (emphasis added). Representative Nixon
emphasized that “the hard reality is we just need to make a hard and fast deadline,
like we do on statue [sic] of limitations—as we do on other requirements.” Id. (citing
Debate on Tex. H.B. 4 on the Floor of the House, 78th Leg., R.S. 317 (March 19,
2003) (statement of Rep. Nixon) (transcript available from Capitol Research Services,
Austin, Texas)) (emphasis added).
          Here, not only did the Polands meet former section 74.351(a)’s deadline, they,
by providing the expert report of Dr. Moritz directly to the attorneys of St. Luke’s and
THI prior to filing their health care liability lawsuit, essentially placed all of their
cards on the table to effectuate an early settlement of the case. As noted by the trial
court when addressing the Polands’ attorneys at the hearing on the motion to dismiss:
What I will do is I will issue an order one way or the other. . . . Because
this issue needs to be decided. Because lawyers usually don’t do what
you have done. And I feel like plaintiffs were attempting to do what the
statute attempts to require of them. And usually the case is plaintiffs are
trying to do the least, and defendants file a motion to dismiss in that
situation. 

(Emphasis added.) 
          Setting aside the trial court’s express finding that the Polands had timely served
their expert report on the St. Luke’s and THI attorneys and then dismissing the
Polands’ claims with prejudice and making them pay the attorney’s fees of St. Luke’s
and THI under these circumstances constitutes a misapplication of former section
74.351(a). In doing so, the panel misinterprets the plain language of the statute and
goes against its purpose to stem frivolous lawsuits against health care providers while
promoting fairness and efficiency in such lawsuits.
          Certainly, a health care liability claimant’s certification of compliance with rule
21a in delivering an expert report to a defendant doctor or health care provider would
entitle the claimant to “a presumption of delivery” of the report. However, the bottom
line is that the claimant need not rely on such “a presumption of delivery” after
establishing that the defendants’ attorneys were actually served with the report. 
      Accordingly, this panel’s statement in the instant case and in Ott that former
section 74.351(a) implicitly incorporates the requirements of rule 21a and the panel’s
statement in Gutierrez that “proper service under rule 21a must occur to effectuate
the intent of Chapter 74 as a whole, and section 74.351 specifically” are in serious
error. See St. Luke’s Episcopal Hosp., 2009 WL _______, at *__; Ott, 2008 WL
5392015, at *16; Gutierrez, 237 S.W.3d at 873. 
Conclusion
          In sum, the En Banc Court should hold, as did the trial court, that the Polands
timely served St. Luke’s and THI with the health care liability expert report of Dr.
Moritz, overrule St. Luke’s and THI’s first issue, and address St. Luke’s and THI’s
second issue. Moreover, the En Banc Court should overrule this Court’s holdings in
Ott and Gutierrez that “proper service under rule 21a must occur to effectuate the
intent of Chapter 74 as a whole, and section 74.351 specifically.” Ott, No., 2008 WL
5392015, at *16; Gutierrez, 237 S.W.3d at 873. Accordingly, I respectfully dissent
from the denial of en banc consideration of this case.                             
 
                                                                        Terry Jennings
Justice

Panel consists of Justices Taft, Keyes, and Alcala.

Appellants moved for rehearing to the panel. See Tex. R. App. P. 49.1. Appellees
moved for rehearing to the panel and for en banc reconsideration to the Court. See
Tex. R. App. P. 49.1, 49.7. 

The panel denied appellees’ motion for rehearing addressed to it, leaving pending
appellants’ motion for rehearing and appellees’ motion for en banc reconsideration
and extending the Court’s plenary power over the case. See Tex. R. App. P. 19.1,
49.3.

The Court granted appellants’ motion for rehearing and withdrew its opinion and
judgment issued February 14, 2008, thus rendering moot appellees’ motion for en
banc reconsideration. See Brookshire Bros., Inc. v. Smith, 176 S.W.3d 30, 41 n.4
(Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh’g).

After the Court withdrew its February 14, 2008 opinion and judgment, during the
pendency of the Court’s plenary power over the case, and before another opinion and
judgment had issued in the case, en banc consideration was requested from within the
Court. See Tex. R. App. P. 41.2(c).

Chief Justice Radack and Justices Taft, Jennings, Keyes, Alcala, Hanks, Higley, and
Bland participated in the vote to determine en banc consideration. 

A majority of the Justices of the Court voted to deny en banc consideration. See id.
Justice Taft, concurring in the denial of en banc consideration. See Tex. R. App. P.
47.5.

Justice Jennings, joined by Justice Bland, dissenting from the denial of en banc
consideration. See id.