# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00675-CV

**Nagakrishna Reddy, M.D., and New Braunfels Ob/Gyn, P.A., Appellants**

**v.**

**Haley Hebner and Darrin Charles Scott,**
**Individually and as Next Friends of R. M. S., a Minor, Appellees**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. C2012-0266A, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## O P I N I O N

Haley Hebner and Darrin Scott sued Nagakrishna Reddy, M.D., and others alleging that the treatment that Hebner received resulted in the death of her infant daughter, R.M.S. In addition, Hebner and Scott also brought vicarious liability claims against the medical association that Dr. Reddy belonged to, New Braunfels Ob/Gyn, P.A. (the Association). A few months after Hebner and Scott filed their suit, Dr. Reddy and the Association filed a motion to dismiss asserting that Hebner and Scott had failed to timely serve an expert report as required by chapter 74 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 74.351. After convening a hearing, the district court denied the motion. Dr. Reddy and the Association appeal the denial of their motion, and we will reverse the order of the district court and remand the case.

## STATUTORY FRAMEWORK

As mentioned above, this case involves a health-care-liability claim. For health-care claims, section 74.351 of the Civil Practice and Remedies Code sets out some procedural requirements that must be complied with early on or else the claim is subject to dismissal. *See* Tex. Civ. Prac. & Rem. Code § 74.351. Specifically, the provision in effect for purposes of this appeal requires that a claimant, "not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, sec. 74.351(a), 2003 Tex. Gen. Laws 847, 875, *amended by* Act of June 17, 2005, 79th Leg., R.S., ch. 635, § 1, sec. 74.351(a), 2005 Tex. Gen. Laws 1590, 1590 (former § 74.351(a)) (current version at Tex. Civ. Prac. & Rem. Code § 74.351(a)).[1] Further, the Code defines "expert report" as "a written report by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code § 74.351(r)(6).

Moreover, the Code explains that if an expert report has not been "served" within the 120-day deadline, the trial court must dismiss "the claim with respect to the physician or health-care provider, with prejudice to the refiling of the claim," provided that the "affected physician or health

---

[1] The current version of the statute requires that an expert report be served "not later than the 120th day after the date each defendant's original answer is filed." Tex. Civ. Prac. & Rem. Code § 74.351(a).

care provider" files a motion to dismiss. *Id.* § 74.351(b); *see Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009) (explaining that there are only two circumstances in which trial court may grant extension to 120-day deadline). The legislature imposed this strict deadline in order to help "reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in the Texas insurance, tort, and medical practice systems." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), 2003 Tex. Gen. Laws 847, 884. By imposing this requirement, the legislature created "a statute of limitations type deadline within which expert reports must be served." *Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007). In other words, if the report is not served by the deadline, trial courts may not grant extensions and have no discretion to deny a motion to dismiss filed by a health-care provider. *Id.* at 319-20. If the report is not timely served, the health-care provider is also entitled to an award of "attorney's fees and costs of court incurred." Tex. Civ. Prac. & Rem. Code § 74.351(b)(1). If a health-care provider files a motion to dismiss because a report was not timely filed and if the trial court denies the motion, the health-care provider may file an interlocutory appeal challenging the denial of the motion to dismiss. *Id.* § 51.014(a)(9) (authorizing appeal "from an interlocutory order" that "denies all or part of the relief sought by a motion under Section 74.351(b)"); *see Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 767 n.3 (Tex. 2011) (per curiam); *see also Colquitt v. Brazoria Cnty.*, 324 S.W.3d 539, 542 (Tex. 2010) (per curiam) (explaining that interlocutory orders are generally not appealable).

In addition to describing what happens when a report is not timely filed, the Code also explains what happens if a report is timely served but is insufficient. Tex. Civ. Prac. & Rem. Code § 74.351(c). Specifically, the provision of the Code in effect for purposes of this appeal states that a defendant health-care provider may object to the sufficiency of the report, but the objections

3

must be filed within 21 days of the report being served. Former § 74.351(a) (waiving all objections to sufficiency of report if objections are not timely filed).[2] When a health-care provider files a motion challenging the adequacy of the report, the court may only grant the motion "if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." Tex. Civ. Prac. & Rem. Code § 74.351(*l*). Further, the Code explains that if the report is found to be deficient, the trial court "may grant one 30-day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c); *see Diaz-Rohena v. Melton*, 253 S.W.3d 218, 218-19 (Tex. 2008) (per curiam) (explaining that health-care provider may file interlocutory appeal of denial of motion to dismiss on grounds that report was deficient and, therefore, untimely).

## DISCUSSION

On appeal, Dr. Reddy and the Association contend that the district court erred by denying their motion to dismiss because Hebner and Scott failed to timely serve expert reports. As a preliminary matter, we note that because Hebner and Scott only presented claims for vicarious liability against the Association, they were not required to serve an expert report regarding the Association provided that they filed a timely and sufficient report regarding Dr. Reddy. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008) (per curiam). Accordingly, in this appeal, we only consider whether a timely report was filed regarding Dr. Reddy.

---

[2] The current version of the statute requires the health-care defendant to object "not later than the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed." Tex. Civ. Prac. & Rem. Code § 74.351(a).

Appellate courts review a ruling on a motion to dismiss under subsection 74.351 for an abuse of discretion. *TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013). Under this standard, a trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In addition, under this standard, appellate courts review legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). Determinations regarding the meaning of section 74.351 are legal questions and are, therefore, reviewed de novo. *See Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). When reviewing whether an expert report complies with the statutory requirements, appellate courts may only consider "the four corners of the expert report" itself. *Apodaca v. Russo*, 228 S.W.3d 252, 257 (Tex. App.—Austin 2007, no pet.).

Along with their petition, Hebner and Scott also served Dr. Reddy and the Association with an expert report from Barry Schifrin, M.D., and from Michelle Murray, Ph.D., RNC. In his report, Dr. Schifrin did not mention Dr. Reddy or the Association, did not discuss any standard of care pertaining to Dr. Reddy, and did not discuss any causal connection between the treatment offered by Dr. Reddy and any injury sustained by Hebner or R.M.S. In fact, the report does not mention Hebner or R.M.S. at all; instead, the report discussed the treatment of another patient by a doctor who is not part of this appeal. Although Murray's report did pertain to the treatment of Hebner, the report focused on how the nurses charged with Hebner's care failed to comply with the relevant standard of care for nurses. The report briefly mentions Dr. Reddy but

only in the context of showing how the nurses did not comply with the standard of care.[3] The report

does not discuss the Association.

To be effective, an expert report must inform the defendant about the conduct

complained of and must provide a basis from which the trial court can determine whether the claims

have merit. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex.

2001). The report "must address all the" statutory elements, "and omissions may not be supplied

by inference." *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011). In fact, the supreme court

has warned that in certain circumstances, an expert report may be so deficient as to constitute no

report at all. *Id.* at 556. Accordingly, the supreme court set out a "minimal standard" under which

a claimant who timely files a deficient report may be entitled to a 30-day extension to cure the

deficiencies rather than have his suit dismissed for failing to file a timely expert report. *Id.* at 557.

---

[3] The report mentions Dr. Reddy in two sections. The first is in a time line, which states that Dr. Reddy "wrote an Admit Note indicating that Pitocin was at 20 mU," that Dr. Reddy was paged to come to the office, that Dr. Reddy explained the surgery, that Dr. Reddy was the surgeon, and that Dr. Reddy wrote a note stating that she was going to perform an emergency caesarean section "for placental abruption." The second section mentioned Dr. Reddy but only in the context of explaining how the nurses did not comply with the governing standard of care. That portion of the report provides as follows:

> Nurse Drinan RN also failed to report the early and variable decelerations to Dr. Reddy between 0744 and 0815. The failure to communicate and discontinue the Pitocin was substandard nursing care that was a precursor for added head compression and oxygen deprivation of [R.M.S.].
>
> . . .
>
> Nurse Drinan also failed to respond properly to early decelerations and/or variable decelerations by her failure to communicate these findings to Dr. Reddy.

At the end of her report, Murray explains that R.M.S. died "as a result of nursing negligence."

Under this standard, a 30-day extension may be granted "if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id.* Similarly, this Court has previously determined that if "a report fails to address the defendant physician, it constitutes no report as to that defendant, and the trial court may not grant a 30-day extension." *Apodaca*, 228 S.W.3d at 257; *see also Garcia v. Marichalar*, 198 S.W.3d 250, 255 (Tex. App.—San Antonio 2006, no pet.) (concluding that report, which did not name defendant doctor or discuss how doctor's treatment did not meet standard of care, "did not constitute a good-faith effort to comply with the statutory requirements").

As discussed above, the reports filed by Hebner and Scott were timely filed and do contain opinions by seemingly expert individuals asserting that certain claims have merit; however, the claims discussed do not pertain to Dr. Reddy, and Dr. Reddy's treatment is not implicated in either report. *See Fung v. Fischer*, 365 S.W.3d 507, 529 (Tex. App.—Austin 2012, no pet.) (concluding that report did not implicate defendant when it did not allege breach by defendant or any causal link between defendant's breach and injury), *overruled on other grounds by Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013); *Rivenes v. Holden*, 257 S.W.3d 332, 337-39 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (determining that trial court abused its discretion by failing to dismiss when expert report did not refer to defendant by name or position, did not explain how any statements in report applied to defendant, did not discuss how defendant failed to meet standard of care, and did not mention how defendant caused any injury); *see also Beckwith v. White*, 285 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (explaining that defendant's conduct is implicated when expert report is primarily directed to care provided by

7

defendant). Accordingly, those reports fall below the minimal standard and, therefore, do not constitute expert reports as required to maintain a suit against Dr. Reddy and the Association. Because no expert report was timely filed, the district court did not have discretion to deny Dr. Reddy and the Association's motion to dismiss, *see Ogletree*, 262 S.W.3d at 319-20, and no 30-day extension could have properly been given, *see Apodaca*, 228 S.W.3d at 257. For that same reason, Dr. Reddy and the Association were entitled to an award of "attorney's fees and costs of court incurred." *See* Tex. Civ. Prac. & Rem. Code § 74.351(b)(1).

In supporting the district court's order, Hebner and Scott contend that Dr. Reddy and the Association waived their right to challenge the sufficiency of the report. Specifically, Hebner and Scott contend that the Code specifies that after an expert report has been filed, "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report" within 21 days of the report being served "failing which all objections are waived." *Id.* § 74.351(a). However, the 21-day deadline for objecting to the sufficiency of an expert report is only triggered if the report implicates the defendant. *Beckwith*, 285 S.W.3d at 62; *see Rivenes*, 257 S.W.3d at 338 (stating that if expert report does not address health-care defendant, defendant can still object to report after passage of 21-day deadline for filing objections); *cf. Poland v. Grigore*, 249 S.W.3d 607, 616 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (explaining that requirement that party object to sufficiency of report within 21 days does not apply when report was not timely served). As described above, the four corners of the reports do not implicate Dr. Reddy.

8

Next, Hebner and Scott urge that the district court correctly denied the motion to dismiss because they provided Dr. Reddy and the Association with an expert report regarding Dr. Reddy prior to suit. That report was sent to Dr. Reddy and the Association with Hebner and Scott's pre-suit notice letters. *See* Tex. Civ. Prac. & Rem. Code § 74.051(a) (requiring individual to give written notice of claim to health-care provider "at least 60 days before the filing of a suit"). Further, they allege that the prior report satisfied the relevant statutory requirements. In fact, they urge that they served Dr. Reddy and the Association with the same report after learning that they had mistakenly served the wrong report when the motion to dismiss was filed. Accordingly, Hebner and Scott assert that the purposes of the expert requirement (informing defendant of conduct at issue and allowing trial court to see if claim has merit) were met. *See Palacios*, 46 S.W.3d at 879.

Recently, the supreme court was confronted with the issue of when an expert report may properly be served. *See Zanchi v. Lane*, 408 S.W.3d 373 (Tex. 2013). In that case, Lane sued Dr. Zanchi in April 2010, but Dr. Zanchi was not served with process until September 2010. *Id.* at 376. In an effort to comply with the 120-day deadline, Lane sent his expert report to Dr. Zanchi before Dr. Zanchi was served. *Id.* After he was served, Dr. Zanchi filed a motion to dismiss alleging that the report was not timely served. *Id.* Specifically, Dr. Zanchi urged that section 74.351(a) requires that a report be served on each party but that he was not a party to the suit when the report was mailed because he had not been served with process. *Id.* When addressing his claims, the supreme court determined that for health-care claims "the term 'party' means one named in a lawsuit" and that serving Dr. Zanchi with an expert report prior to Dr. Zanchi being provided with service of process satisfied the statutory requirements because Dr. Zanchi had been named in the suit.

9

*Id.* at 377; *see also id.* at 379 (explaining that defining party as one named in lawsuit is consistent with terms of former section 74.351 because it does not affect deadline for expert report, which is 120 days from when petition was filed).

Given the supreme court's directive regarding when an expert report may properly be served, we cannot conclude that the expert report mailed with Hebner and Scott's pre-suit notice letters satisfied the relevant statutory requirements. Although we need not address the matter further, we do note that another appellate court was faced with the issue of whether serving an expert report prior to a lawsuit being filed complies with the governing statutory framework. *See Poland v. Ott*, 278 S.W.3d 39 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). In that case, the appellate court determined that providing "an expert report before a health-care liability claim is filed in court against the physician or health-care provider does not meet" the statutory requirements. *Id.* at 46. In reaching that result, the court noted, among other reasons, that subsection 74.351(a) of the Code "speaks in terms of service on a *party* . . ., and it uses the term 'defendant' for the physicians and health-care providers whom the expert report implicates." *Id.* at 48. Accordingly, the court noted that "[o]ne is not a 'party' or a 'defendant' until a claim is asserted against one in a suit." *Id.* The court also explained that the Code requires "the claimant give presuit notice of his . . . claim before the filing of a court claim, but the purpose of the notice provision" is to avoid excessive litigation costs by encouraging pre-suit negotiations. *Id.* at 50. Further discussing that purpose, the court mentioned that because the former Code provision required objections to be made within 21 days of the report being served, allowing individuals to serve expert reports pre-suit would result in individuals who would not ultimately have been named as a party to a lawsuit to object to the

10

sufficiency of the report within 21 days of it being served. *Id.* at 50. Finally, the court explained that

one of the purposes behind the promulgation of subsection 74.351(a) was to create deadlines for

serving expert reports that are hard and fast and that that purpose would be frustrated by allowing

service to occur before a suit is filed because the certainty of the deadline would become less clear.

*Id.* at 50-51. For example, the court explained that physicians or health-care providers who receive

a report prior to a suit being filed will have to guess "whether the document is intended to satisfy

chapter 74 or instead intended simply to be a negotiation tool." *Id.*[4]

Finally, Hebner and Scott contend that the doctrines of due diligence and relation

back apply to health-care claims and should be applied to the "service of the correct Schifrin report

and relate it back to the filing of the incorrect expert report." In making this claim, Hebner and Scott

note that "this case presents a unique set of circumstances" because an expert report regarding

Dr. Reddy's conduct was prepared, because the report was given to Dr. Reddy and the Association

---

[4] As support for the district court's order, Hebner and Scott point to *University of Texas Health Science Center v. Ripley*, 230 S.W.3d 419 (Tex. App.—San Antonio 2007, no pet.). In that case, the claimants initially filed a health-care-liability claim in federal court and then re-filed the suit in state court after the federal case was dismissed. *Id.* at 420. While the suit was pending before the federal court, the claimants served an expert report. *Id.* After the state suit was filed, the health-care defendant sought to dismiss the suit on the ground that the claimants did not timely serve an expert report. *Id.* at 421. On appeal, the court determined that serving the health-care defendants with an expert report during the federal lawsuit was sufficient to comply with the 120-day deadline in the Code. *Id.* at 422-23.

Although *Ripley* does support Hebner and Scott's contention that the requirements of the Code can be satisfied before a suit has been filed, we believe the holding in that case is limited by the unique procedural posture of that case. That case involved state and federal litigation of the same health-care claim, and the health-care defendant was a party to both lawsuits. In any event, as discussed above, we believe that the supreme court's recent ruling in *Zanchi v. Lane*, 408 S.W.3d 373 (Tex. 2013), supports the proposition that sending an expert report along with a pre-suit notice cannot satisfy the expert report requirements.

11

prior to suit, because Hebner and Scott diligently but mistakenly attached the wrong expert report when they filed their original petition, and because Hebner and Scott corrected their mistake by serving the correct report when they discovered the oversight.

As support for the idea that the filing of the correct expert report should relate back to the time when the incorrect one was served on Dr. Reddy and the Association, Hebner and Scott point to a recent supreme court case that they urge held that "the concepts of due diligence and relation back apply to the service of Chapter 74 expert reports." *See Stockton*, 336 S.W.3d at 615-17. However, rather than explicitly deciding whether those concepts apply to the service of expert reports, the court simply stated that even if those concepts could apply in the chapter 74 context, it was "not persuaded that the evidence here is legally sufficient to raise the issue." *Id.* at 616. Accordingly, we cannot agree with Hebner and Scott's assertion that the supreme court has held that those concepts can be applied to chapter 74 reports.

In any event, it is not entirely clear that the concepts would have any applicability in this case. *See id.* at 615 (explaining that under doctrine, plaintiff who files petition within limitations period but does not complete service until after statutory deadline "is entitled to have the date of service relate back to the date of filing, if the plaintiff has exercised due diligence in effecting service"). Unlike what happened in *Stockton*, there is no allegation in this case that Hebner and Scott had any difficulty executing service of process or serving Dr. Reddy and the Association with expert reports; to the contrary, all the parties agree that Hebner and Scott were able to timely execute service and to serve Dr. Reddy and the Association with an expert report. Instead, this case presents a situation in which a report was timely filed, but it was the wrong report.

12

Although Hebner and Scott urge that the mistake should be overlooked in this case, the legislature has evidenced its intent to not allow mistakes to stop the running of the 120-day deadline. Under the predecessor to chapter 74, a plaintiff could be given an extension to file an expert report when the plaintiff was able to show that he failed to file a timely report due to an accident or mistake. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(g), 1995 Tex. Gen. Laws 985, 986 (adding "mistake or accident" provision to article 4590i), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. However, when the legislature promulgated chapter 74, it specifically chose not to incorporate a similar provision allowing for extensions due to accident or mistake. *See* Tex. Civ. Prac. & Rem. Code § 74.351 (providing no exception to 120-day deadline for filing expert report other than by agreement of parties or through one 30-day extension to cure timely filed but deficient report). Although we recognize the harshness of the result in this case, we must also recognize that public policy decisions regarding expert reports are tasks best suited for the legislature, and the choices ultimately made by the legislature are binding on this Court. *See Stockton*, 336 S.W.3d at 619 (explaining that courts may not rewrite statutes to reach more desirable result); *see also Palosi v. Kretsinger*, No. 04-08-00007-CV, 2009 Tex. App. LEXIS 899, at *7 (Tex. App.—San Antonio Feb. 11, 2009, no pet.) (mem. op.) (affirming dismissal of suit for failing to file expert report even though attorney unexpectedly died after suit was filed).

For all these reasons, we must conclude that Hebner and Scott did not timely serve Dr. Reddy or the Association with an expert report and, therefore, that the district court abused its discretion by failing to grant the motion to dismiss filed by Dr. Reddy and the Association. Accordingly, we sustain Dr. Reddy and the Association's issue on appeal.

13

**CONCLUSION**

Having sustained Dr. Reddy and the Association's issue on appeal, we reverse the district court's order and remand the cause with instructions to the trial court to award Dr. Reddy and the Association reasonable attorney's fees and costs of court and to dismiss Hebner and Scott's claims against Dr. Reddy and the Association with prejudice. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b).

 

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose
  Dissenting Opinion by Justice Pemberton

Reversed and Remanded

Filed:   May 2, 2014